UNITED STATES DISTRICT COURT FOR MASSACHUSETTS

Dr. SHIVA AYYADURAI,  )
          Petitioner,  )
                 )
      v.       )
                 )
WILLIAM F. GALVIN,  )
in his official capacity as  )
Secretary of State,  )
         Respondent.  )

EMERGENCY PETITION FOR A
PRELIMINARY INJUNCTION

FILED
IN CLERKS OFFICE
2020 NOV 20  AM 9: 55
U.S. DISTRICT COURT
DISTRICT OF MASS.

## CONCISE STATEMENT OF CLAIM PER RULE 8

Defendant Galvin ordered that electronic voting machines used in Massachusetts must delete ballot images after using the ballot images, or also known as ballot scans, to tabulate the vote in the elections just held for the Republican primary in September 2020 and the elections for US Senate in November 2020, in which Plaintiff Dr. Shiva Ayyadurai was a candidate. This act of deletion violated 52 USC 20701 and 20702. Chain of custody has been broken, no transparent audit of the ballot images used for tabulating the vote count is possible and the declared numbers are unreliable.

Only a hand-count of the paper ballots submitted by voters in both the primary and the Senate races can restore the credibility of the vote count. An order restraining Defendant Galvin from certifying the electronic vote count before conducting a transparent count of the paper ballots is necessary to ensure integrity of the process in Massachusetts. Plaintiff Dr. Shiva seeks an order from this court enjoining Defendant Galvin from certifying the election results for the 2020 Republican primary race and the 2020 US Senate race before Defendant Galvin conducts a

transparent hand-count of the paper ballots cast in both races. Delay in certification is more efficient that decertifying a race.

## PARTIES

PETITIONER, DR. Shiva Ayyadurai, is a citizen of the United States and resident of the State of Massachusetts, and a candidate for U.S. Senate from the State of Massachusetts.

RESPONDENT, William F. Gavin, is a citizen of the United States and resident of the State of Massachusetts, and at all times herein was acting in his official capacity as the Secretary of the State of Massachusetts.

## JURISDICTION

This Court had jurisdiction pursuant to 28 USC § 1332, Federal question jurisdiction, as the facts, allegations and causes of action stated herein implicate the conduct and action of the Defendant in the course of Federal elections, which are governed by Federal law.

## FACTS OF THIS CASE

Dr. Shiva was born in India in 1963 into India's oppressive caste system as a low-caste untouchable. The oppressive conditions and the corrupt system of socialist governance in India motivated his parents to immigrate to the United States in 1970 to seek greater liberty and respect for individual rights, including the U.S. Constitution's iron-clad protection for freedom of speech, as well as opportunities for themselves and their children.

Dr. Shiva earned four (4) degrees from the Massachusetts Institute of Technology: a bachelor's in Electrical Engineering and Computer Science, masters degrees in both Mechanical Engineering and Visual Studies, as well as a doctoral degree in Biological Engineering.

Dr. Shiva is a Fulbright Scholar, a Westinghouse Honors Award recipient, a member of multiple research and engineering academic honor societies including Eta Kappa Nu, Sigma Xi, and Tau Beta Pi, a Lemelson-MIT Awards Finalist, and was nominated for the National Medal of Technology and Innovation bestowed by the President of the United States.

As an educator, Dr. Shiva has developed new curricula and taught at both undergraduate and graduate levels at MIT and has presented invited lectures at leading academic institutions across the world.

In addition Dr. Shiva is responsible for seven (7) start-up technology companies and presently runs his own biotechnology company, CytoSolve. Justia's list of Dr. Shiva's patents is at https://patents.justia.com/inventor/v-a-shiva-ayyadurai

In August of 2011, Dr. Shiva opened his Twitter account, **@va_shiva**, to build an independent base and reach local, national and global audiences to support his activism in various scientific, social and governance causes. This Twitter account also served as his primary platform to communicate with potential voters during his runs for political office. It is vital for this court to note that as a private citizen, this Twitter account represents the speech of a private individual even during a run for political office.

Between August 2011 and August 2020, Dr. Shiva had grown his Twitter audience from zero to a quarter of a million people who regularly heard what he had to say on diverse topics important to him, and interacted with him online.

In February 2017, Dr. Shiva first ran for Federal office for the U.S. Senate as an Independent candidate, challenging incumbent Senator Elizabeth Warren, and conducted a dynamic campaign both on the ground across cities and towns in Massachusetts, and on Twitter with the slogan "Only A REAL Indian Can Defeat A FAKE Indian!"  That election took place in November 2018.  There were no troubles regarding his Twitter account throughout 2017-2018 campaign, though "election misinformation" was a prominent topic in the daily news.  The City of Cambridge, however did retaliate against Dr. Shiva, by using a disparate reading of zoning law, to demand Dr. Shiva remove the large banner on his campaign bus with slogan exposing Elizabeth Warren's lack of integrity.  Dr. Shiva filed a lawsuit *Ayyadurai v. Cambridge*, 1:18-CV-10772-RWZ, and prevailed in defending his First Amendment rights.

In January 2019, Dr. Shiva began his run for U.S. Senate against incumbent Senator Edward Markey as a Republican candidate. For this, he participated in a primary election within the Republican Party, and met the challenge with a ground organization of approximately 3,100 volunteers, distributed approximately 10,000 lawn signs, received donations from about 20,000 people that funded billboards at prominent spots on highways, advertisements on social media, radio and television, and made "Dr. Shiva" a recognized household name across all 351 cities and towns in Massachusetts.  In addition, Dr. Shiva personally crisscrossed the state and held rallies to reach a diversity of demographics.  It is vital to note that his campaign always met or exceeded all regulatory requirements set by the Elections Division at the Office of the Secretary of State.

In February 2020,  one year after Dr. Shiva began his campaign, Kevin O'Connor, in his first run for political office, entered the Republican primary race. O'Connor was however endorsed by Massachusetts Governor Charles Baker, who held fundraisers for him.

4

On September 1, 2020, the Massachusetts Republican primary for U.S. Senate was held. Dr. Shiva's internal polls had shown him leading in all counties. The announced results showed he had won in Franklin County by nearly ten-percent (10%) over his opponent, but had lost in all other counties by a consistent ratio of approximately 60% to 40%, to an opponent with little visibility, only a handful of volunteers, and no real campaign organization. His opponent, who was endorsed and supported by Charlie Baker and the Massachusetts GOP, had won.

Dr. Shiva investigated and discovered that Franklin County was the only county where approximately seventy-percent (70%) of the towns counted the paper ballots by hand. The rest of the counties primarily used electronic systems that generated ballot images, which were then analyzed by a computer program to tabulate vote counts.

Dr. Shiva's campaign filed Public Records Requests to the various counties, under MGL ch. 66, for (a) the list of participating voters – those who actually voted in the election, and (b) the counts of the actual numbers of votes cast. Seven (7) of the fourteen towns/cities provided the records. In all seven (7) towns/cities, the number of tabulated votes was larger than the number of participating voters. Boston had approximately 4,100 more votes than participating voters; and, Newton had approximately 1,700 more votes than participating voters. Accessing and analyzing the ballot images – which are in the chain of custody of tabulating votes – therefore became critical to understanding the root cause of the discrepancy between Franklin county and the other counties.

On September 9, Dr. Shiva personally went to Secretary Galvin's office to deliver a Public Records Request to the Secretary, under MGL ch. 66, to determine whether or not the Secretary of State stored all ballot images, as it is these digital records generated in the course of a federal election, that are used to tabulate votes when ballots are electronically processed. It is

important to note that in all counties, other than Franklin County, the majority of paper ballots were simply collected and stored. In those counties, which primarily use electronic systems for tabulating votes, the ballot images *are* the ballots, since the ballot images are  the objects upon which tabulation takes place.  The electronic systems employ various computer algorithms during the tabulation process, including Weighted Race techniques which affords the capability to multiply a candidate's vote counts by a decimal factor.  For example, if candidate A received 1,000 votes and candidate B received 1,000, the Weighted Race technique can multiply candidate A's votes by a factor such as 2.5 and candidate B's by a factor of 0.8 to result in final tabulated vote counts for candidate A of 2,500 votes and candidate B of 800 votes, respectively.

## ALLEGATIONS AND CLAIMS FOR RELIEF

Pursuant to Federal law, Galvin is required to securely store or retain for twenty-two (22) months any and all records generated in connection with an election for a Federal office, such as U.S. Senate.  U.S. Code provides:

CHAPTER 207 - FEDERAL ELECTION RECORDS
52 USC 20701: Retention and preservation of records and papers by officers of elections; deposit with custodian; penalty for violation

Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both. ( Pub. L. 86–449, title III, §301, May 6, 1960, 74 Stat. 88 .)

52 U.S.C. § 20702 - Theft, destruction, concealment, mutilation, or alteration of records or papers; penalties
Any person, whether or not an officer of election or custodian, who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title to be retained and preserved shall be fined not more than $1,000 or imprisoned not more than one year, or both.

. On that same day - September 9, 2020 - William Rosenberry, an Elections Division official in Defendant Secretary Galvin's office, was publicly documented on video at the Secretary's office declaring to Dr. Shiva that the Secretary possessed "no ballot images" as the Secretary's office "turned that feature off" so as to not save the ballot images, which were generated by the ballot scanners. It should be noted that the default – factory setting – on the electronic machines is to save all ballot images so as to be compliant with Federal law. Rosenberry informed Dr. Shiva that he would send him an email documenting Secretary Galvin's position on the matter.

On Monday, September 21, 2020, Dr. Shiva returned in person back to Secretary Galvin's office to follow up on the Public Record Request. Dr. Shiva came with storage devices to collect the ballot images. He also documented, in writing, Rosenberry's earlier statement of the deletion of ballot images and further requested, in writing, what information the Secretary's office would be delivering him. Defendant Galvin's Legal Counsel Tassinari was also present at this meeting, and Tassinari informed Dr. Shiva in the presence of Rosenberry that the Secretary's office did not have to respond for ten (10) business days, and told Dr. Shiva that she would respond by the end of the day on Wednesday, September 23, 2020 by email.

On September 24, 2020, at approximately 9:00AM, Dr. Shiva contacted the Secretary's office via telephone and asked where the response to his Public Records request was as it was due on September 23, 2020. Rosenberry was recalcitrant and after Dr. Shiva informed him that

he was in violation of Federal law for not delivering him his records within the ten (10) business days, Rosenberry responded and said, "No, I'm in violation of State law." At the end of the conversation, Rosenberry assured Dr. Shiva that he would deliver it by 5:00PM that day. Dr. Shiva documented this phone conversation in the email below, in which he specifically memorialized Rosenberry's admission to having violated Massachusetts State Law:

September 24, 2020

William Rosenberry
Elections Division

RE: Second Follow Up on Public Records Request

Dear William:

On my Monday, September 21, 2020, at approximately 4:45PM, my colleagues and I followed up with your office, in person, concerning my records request made on September 9, 2020. I provided you written communication of my office visit and request at that time. You and your attorney - all of which is documented - assured me that I would receive a formal written response to my September 9th records request, via email to vashiva@vashiva.com, which would have been yesterday, September 23, 2020.

You and your attorney, at the time of the Monday meeting, stated that the response was to be sent in "10 business days, not 10 calendar days" therefore, you and your attorney said you were obligated and required to send the response on September 23, 2020, not September 21st, by Massachusetts State Law.

Yesterday, September 23, 2020, I did not receive the response to my records request via email, as you and your attorney had promised and reassured me September 21, 2020. In fact, I do not have the response as of the time of the writing of this email.

This morning, September 24, 2020 at 9:32 AM, I called your office to reach you, as a follow up to see if you had responded to my records request, and if so, to the right address. Upon trying to reach you, I was put on hold by your assistant "Logan," and was told that you told Logan I should put anything else I wanted in writing. I told Logan that this made no sense, and I knew you were on site, and I wanted to speak to you.

Finally, I was transferred to you, and upon speaking with you, you said that I would receive the response to my records request "no later than 5PM today [September 24, 2020]." You acknowledged that you had violated Massachusetts State Law by not delivering the response yesterday.

Dr. Shiva Ayyadurai
U.S. Senate Candidate

Within less than thirty (30) minutes of Dr. Shiva transmitting the above email to

Rosenberry that documented Rosenberry's violation of State Law, Tassinari responded to Dr.

Shiva's request:

> On Thu, Sep 24, 2020 at 10:47 AM Tassinari, Michelle (SEC)
> <michelle.tassinari@state.ma.us> wrote:
>
> Good Morning-
>
> I am writing to acknowledge receipt of your request for records. Please
> note, that this Office does not maintain voter tabulation software,
> firmware or hardware.  While this office certifies voting equipment, as
> required by law, we do not purchase or lease equipment.  Once
> equipment is approved by this Office, cities and towns can purchase or
> lease such equipment.  Accordingly, this Office has no records
> responsive to your request.
>
> Further, to the extent you request the same information from local
> election officials, please note that the approval of digital scan equipment
> in Massachusetts specifically prohibits the capturing of ballot images.
>
> Michelle K. Tassinari
> Director and Legal Counsel
> Elections Division
> One Ashburton Place, Room 1705
> Boston, MA 02108
> 617-727-2828
> ----------------------------

Tassinari's last sentence, coming as it did from the Secretary's own legal counsel and

Director of the Election Division, struck Dr. Shiva as beyond bizarre given the supremacy of

Federal law. It was remarkable and required clarification.  Therefore, Dr. Shiva emailed back:

> **From:** Shiva Ayyadurai <vashiva@vashiva.com>

**Sent:** Thursday, September 24, 2020 11:22 AM

**To:** Tassinari, Michelle (SEC) <Michelle.Tassinari@sec.state.ma.us>

**Subject:** Re: Records Request

CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system.  Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Michelle,

Kindly refer me to the statute or law, in which the "...approval of digital scan equipment in Massachusetts specifically prohibits the capturing of ballot images."

Thank you in advance.

Warmest regards,

Dr. Shiva Ayyadurai

US Senate Candidate.

-------------------------------

In response to Dr. Shiva's email requesting the specific Massachusetts law or regulation that apparently authorizes the Secretary to ***prohibit*** "***capturing of ballot images"*** in Massachusetts,  Tassinari did not cite any law in her September 25, 2020 email response:

On Sep 25, 2020, at 11:45 AM, Tassinari, Michelle (SEC) <michelle.tassinari@state.ma.us> wrote:

Shiva-

Attached please find the certification of two different types of digital scan equipment in Massachusetts.

Please note that while the ballot images are not stored, the actual ballots voted on at any federal election are secured and stored for 22 months in accordance

with federal law. However, under state law, those ballots must remain sealed until such time as they can be destroyed.

Michelle K. Tassinari

Director and Legal Counsel

Elections Division

-------------------------------------

That email from Tassinari generated the following email response from Dr. Shiva:

From: Shiva Ayyadurai <vashiva@vashiva.com>

Date: September 25, 2020 at 10:33:09 PM EDT
To: "Tassinari, Michelle (SEC)" <michelle.tassinari@state.ma.us>
Cc: John R Brakey <johnbrakey@gmail.com>, Venu Julapalli <vrjula@protonmail.com>, Ralph Lopez <ralphlopez2008@gmail.com>, benniejsmith@gmail.com, Jude Joffe-Block <JJoffe-Block@ap.org>
Subject: Destroying Ballots is Illegal. The Ballot Images ARE the Ballots.   You DESTROYED Them. Period.

Subject:  Destroying Ballots is Illegal. The Ballot Images ARE the Ballots.   You DESTROYED The Ballots. Period.

Michelle
First, you have NOT answered my question, from my previous email.  I repeat it below. PLEASE answer the question.

Kindly refer me to the statute or law, in which the "...approval of digital scan equipment in Massachusetts specifically prohibits the capturing of ballot images."

Second, neither the people of Massachusetts nor I are stupid. I presume you must be under incredible pressure from Bill Galvin and Charlie Baker to deflect this issue to hope it disappears.

However, the fact is the State has illegally destroyed ballots. The electronic equipment used to tally and count the vote MUST first CREATE an image - the ballot image - in order for the vote to be processed and COUNTED by the machine.   When that image is created, that image becomes THE BALLOT, as it is THE entity used to count the vote.  If no image was created, no vote count could exist. You are required by Federal Law to store,preserve, archive those ballots for 22 months.  If those ballot images DO NOT exist, they were DESTROYED. This destruction is illegal, and therefore, the election is null and void.

11

Once again, please answer my question, above.

Warmest regards,

Dr.SHIVA Ayyadurai
US Senate Candidate
-------------------------------

Tassinari never replied to this email and did not cite the statute or law that allowed

Massachusetts to destroy the ballot images that were generated in connection with a Federal

election. In addition, Tassinari consciously omitted this fourth email from her affidavit (#15-2)

filed in court, a decision that can be construed only as aiming to conceal evidence from this

court, given that the fourth email had been posted on Twitter and was one of the four (4) tweets

specifically deleted by Twitter on behalf of the Defendants.

The ballot scanning machines scan the paper ballots and generate a ballot image, which is

then used to tabulate the votes in a Federal election, while the paper ballot is merely physically

retained. It is fundamental statutory interpretation that the ballot image is a *record* and that,

pursuant to 52 USC 20701, Secretary Galvin is required to store *all* records and papers which are

generated in connection with Federal election. *Owasso Independent School Dist. No. I-011 v.

Falvo*, 534 U.S. 426 (2002), *Kasten v. Saint-Gobain Performance* Plastics Corp., 563 U.S. 1

(2011), *Dolan v. Postal Service*, 546 U.S. 481 (2006), *People v. Aleynikov*, 2018 NY Slip Op

03174 [31 NY3d 383]

It is important to note that when the Weighted Race feature is enabled, the number of

votes tabulated will likely not match the number of ballot images. Therefore, access to ballot

images, in the chain of custody, is essential in verifying the integrity of an election.

It is an undeniable fact that the electronic systems for counting votes do generate the

ballot images. That is how they work. Tassinari is incorrect in her use of the term "capturing"

when it comes to these generated images. The images are created, and if they are not captured, that is merely a euphemism for destroyed.  If she meant that the records are "not stored" after they are generated, which is what Defendant O'Malley also stated, that is a written admission of a Federal violation. And that indeed is exactly what Tassinari meant: "the ballot images are not stored[.]"

Tassinari's email conversation with Dr. Shiva intended to downplay the critical importance of ballot images in the tabulation process of votes, and to create a false impression of the preeminence of paper ballots.  Elections officials across the country are aware of lawsuits filed by election integrity activists, such as John Robert Brakey (YouTube video: https://www.youtube.com/watch?v=PESVW--fpOI ), seeking transparency in the handling of ballot images by State Elections Directors.   The only possible conclusion is that Tassinari, a practicing attorney, chose the word *capture* to mislead and misdirect Dr. Shiva and give the false impression that in Massachusetts ballot images never exist, at all, at any time. This is supported by the effort expended by both Tassinari and O'Malley to falsely claim, including in press statements, that the paper ballots are saved and so Federal law has been satisfied, as if paper ballots are used to tabulate the vote when electronic machines are used. Repeat, the votes, when electronically handled, are tabulated exclusively using the ballot images. Altering them or deleting them, as Defendant Galvin has done, breaks the required chain of custody and makes a transparent audit of the vote impossible.

Given that maintaining custody of the records and ensuring transparency and integrity of the electoral process is Defendant Galvin's day job, a responsibility he has held for twenty-five (25) consecutive years, the only possible conclusion is that Defendant Galvin fully intended to prevent even the possibility of a transparent audit and fully intended to cheat the citizens of their

choice. In order to prevent this malign intent from being established as the state's certified election result, this injunction is required. While elections have been decertified for various reasons and it is not unprecedented by any stretch, delaying certification until a hand-count of the paper ballots is complete is the better option. This was the step taken in 2008 in the case of the US Senate Race in Minnesota. Courts have also decertified election results due to fraud.

https://www.baltimoresun.com/maryland/baltimore-city/bs-md-ci-election-intervention-20160512-story.html

### WHY AN INJUNCTION MUST ISSUE ORDERING A PAPER COUNT AND STAY OF CERTIFICATION OF THE ELECTRONIC VOTE COUNT

Secretary William Francis Galvin has previously been sued in his official capacity in order to obtain from Federal court a permanent injunction that enjoins him from suppressing political speech and silencing a candidate wholesale during the candidate's election campaign, be it for Federal, state or local office. This petition seeks a permanent injunction enjoining Secretary William Francis Galvin from certifying the electronic vote count in both the 2020 U.S. Senate Republican Primary race, and the 2020 U.S. Senate general election race, unless and until a complete hand, paper ballot recount is completed, since the ballot images have been destroyed in violation of Federal law in both elections.   This is permissible under the exception carved out by the Court for prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908)

The court must weigh four factors when deciding whether to grant injunctive relief: (1) The likelihood of success on the merits; (2) The potential for the movant to be irreparably harmed by denial of the relief; (3) The balance of the movant's hardship if relief is denied versus the nonmovant's hardship if relief is granted; and (4) The effect that granting relief will have on the public interest. *Phillip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir., 1998), *Monsanto v. Geertson*, 561 U.S. 139 (2010), *Trump v. Hawaii*, 585 U.S. ___ (2018), *Arborjet,*

14

*Inc. v. Rainbow Treecare*, 794 F.3d 168 (1st Cir. 2015), *Planned Parenthood League v. Bellotti*,

641 F.2d 1006 (1st Cir. 1981)  These factors are easily met in this action.

1      Likelihood of success on the merits favors the Plaintiff

The facts of this case demonstrate that the Plaintiff here has a great likelihood of success

on the merits because the Defendant has already proven already demonstrated his intrinsic

contempt for the Constitution and Federal law. External control is mandatory.

The US 1st Circuit Court of Appeals ruled in *Griffin v. Burns*, 570 F.2d 1065 (1st Cir.

1978) that a fresh primary election was necessary to ensure the binding principle that the voters'

choice must be respected and reflected in the choice of their representative.

"While the "outcome" test provides a sensible guideline for determining when federal
judicial invalidation of an election might be warranted [citations omitted], it is not a principle
requiring mathematical certainty. In cases of outrageous racial discrimination some courts have
chosen not to apply it at all, but to invalidate the election simply for its lack of integrity. . . .
Here, the closeness of the election was such that, given the retroactive invalidation of a
potentially controlling number of the votes cast, a new primary was warranted."

The 3rd Circuit ruled in its thoughtful and comprehensive decision in *Marks v. Stinson*,

19 F.3d 873 (3d Cir. 1994):

"The integrity of the election process lies at the heart of any republic. The people, the
ultimate source of governmental power, delegate to their elected representatives the authority to
take measures which affect their welfare in a multitude of important ways. When a representative
exercises that authority under circumstances where the electors have no assurance that he or she
was the choice of the plurality of the electors, the legitimacy of the governmental actions taken is
suspect. Accordingly, where there is substantial wrongdoing in an election, the effects of which
are not capable of quantification but which render the apparent result an unreliable indicium of
the will of the electorate, courts have frequently declined to allow the apparent winner to
exercise the delegated power. See, e.g., *Bell v. Southwell*, 376 F.2d 659 (5th Cir. 1967)."

All the Circuits as well as the US Supreme Court are united on this bedrock principle.

"Undeniably, the Constitution of the United States protects the right of all qualified
citizens to vote, in state as well as in federal elections. A consistent line of decisions by this
Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly
clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected

right to vote, *Ex parte Yarbrough*, 110 U.S. 651 [4 S.Ct. 152, 28 L.Ed. 274], and to have their votes counted, *United States v. Mosley*, 238 U.S. 383 [35 S.Ct. 904, 59 L.Ed. 1355]."

*Reynolds v. Sims*, 377 U.S. 533, 554, 84 S.Ct. 1362, 1377-78, 12 L.Ed.2d 506 (1963)

In our case here, Plaintiff is not, yet, seeking that a fresh primary election be ordered. He merely seeks a stay of certification of the US Senate race until a transparent hand-count of the paper ballots is completed, after being ordered by this court, as the only possible remedy and response to the revelation that the electronic ballot images that were used to generate the electronic vote count have been deliberately deleted by Defendant Galvin, in conscious violation of Federal law, in order to ensure that they are unavailable for a proper audit.

In these United States there is no choice but to stay certification of the electronic vote count and to order a hand-count of the paper ballots cast in both the Republican primary election as well as the US Senate election.

The Plaintiff, the candidate who has been consciously and willfully harmed in a most un-American fashion by Defendant Secretary Galvin, through conscious abuse of his official status and powers, is assured of succeeding on the merits of his claim. Plaintiff's claim also meets the required plausibility standard. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Iannacchino v. Ford Motor*, 451 Mass. 623 (2008)

2      This political candidate has already been irreparably harmed

"These voting rights are potentially violated, however, whenever an individual is sworn in as an elected representative without a demonstration that he or she was the choice of a plurality of the electorate. This is so because the possibility is left open that some other candidate actually received more votes than the declared winner, which would mean that each of the votes cast for this other candidate was ignored." *Marks*, supra.

That ***public demonstration*** is impossible without a hand-count of the paper ballots because Galvin has consciously destroyed the electronic ballot images that were used to tabulate the electronic vote count. Defendant Galvin must be ordered by this court, as the only remedy

possible, to allow a transparent hand-count of the paper ballots from the Republic primary election in September 2020, as well as the US Senate election in November 2020, and that certification be stayed until the paper count is complete.

No other choice passes Constitutional muster as the Plaintiff here, one of two candidates in the Republican primary race, has already been harmed in all areas that reported an electronic vote count and has likely been cheated out of an election, as have his voters.

3       Defendant Galvin faces no harm from an injunction

Galvin faces no harm whatsoever from being required by this court to further refrain from abusing his office to consciously violate bedrock Constitutional principles as well as Supreme Court rulings and 1st Circuit rulings. Galvin is already required by his oath of office to ensure a transparent *public demonstration* that the certified result is a true reflection of the people's choice and that all votes were counted fully. Without a paper ballot count that is impossible. *Ergo*, a paper ballot count is mandatory. If Galvin actually cares about bedrock American principles, and that "all votes must be counted," he will not oppose this order at all. Again, no voluminous briefing is required for this court to follow hornbook law.

"Strong medicine is required to cure the Defendant's disrespect for the law." *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70 (1st Cir. 2000) The injunction must issue.

4       The requested injunction is in the public interest

It is in the public interest to uphold the rule of law and require elected officials to stop abusing their office in order to throw an election and ignore the people's votes. It is in the public interest to publicly demonstrate that the certified vote count reflects the true choice of the electors.

17

"The integrity of the election process lies at the heart of any republic. The people, the ultimate source of governmental power, delegate to their elected representatives the authority to take measures which affect their welfare in a multitude of important ways. When a representative exercises that authority under circumstances where the electors have no assurance that he or she was the choice of the plurality of the electors, the legitimacy of the governmental actions taken is suspect. Accordingly, where there is substantial wrongdoing in an election, the effects of which are not capable of quantification but which render the apparent result an unreliable indicium of the will of the electorate, courts have frequently declined to allow the apparent winner to exercise the delegated power." *Marks*, supra

In order to comply with the Constitution, Supreme Court rulings and 1st Circuit case law, the requested injunction must be issued, ordering Galvin to ensure a public, transparent hand-count of the paper ballots from the September 2020 Republican primary election and to stay certification of the US Senate election result until that count is complete.

## CONCLUSION AND RELIEF REQUESTED

For the reasons detailed above the court must issue the requested stay order and order a transparent hand-count of the paper ballots.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

**Dr. Shiva Ayyadurai**
November 20, 2020
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com