US DISTRICT COURT FOR MASSACHUSETTS

Case no. 1:20-CV-12080-MLW

Dr. SHIVA AYYADURAI,       )
              Petitioner,       )
                     )
         v.       )
                     )
WILLIAM F. GALVIN,       )
in his official capacity as       )
Secretary of State,       )
           Respondent.       )

## MEMORANDUM OF LAW IN SUPPORT OF
## EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION

On November 18, 2020, pursuant to state law, the various towns and counties in

Massachusetts that conducted the 2020 election for the office of U.S. Senate transmitted their

vote counts to Secretary of State William Francis Galvin for final certification in consultation

with the Governor's Council. That final certification is expected this week. The instant motion is

a true emergency that must be granted in order to ensure the integrity of the voting process.

## BACKGROUND

On September 1, 2020, the Massachusetts Republican primary for U.S. Senate was held.

Dr. Shiva's internal polls had shown him leading in all counties. He had run a grassroots

campaign, had massive name recognition and local popularity, across the state spanning diverse

demographics. The announced results showed he had won in Franklin County by nearly ten-

percent (10%) over his opponent, but had lost in all other counties by a consistent ratio of

approximately 60% to 40%, to an opponent with little visibility, only a handful of volunteers,

and no real campaign organization.  His opponent, who was endorsed and supported by

Governor Charlie Baker and the Massachusetts GOP, had won. Dr. Shiva's internal polls

predicted his victory in not only with the Franklin result, but also across all of Massachusetts. Dr. Shiva investigated and discovered that Franklin County was the only county where approximately seventy-percent (70%) of the towns counted the paper ballots by hand. The rest of the counties primarily used electronic systems that generated ballot images, which were then analyzed by a computer program to tabulate vote counts.

Paper ballots are marked by voters to select the candidates of choice. In some precincts, voters also use touch-screen equipment, which records their vote digitally without any paper involved. Digital scanners scan paper ballots and create an electronic image of the paper ballot. This raw image file is called the **ballot image** or ballot scan, and is an electronic file with an assigned file name. This raw file is held within the scanning machine and used to tabulate the vote count. The analysis of the ballot images is used to generate the Cast Vote Record (CVR), which captures the tabulation of votes including the number of votes for each candidate, write-in votes, undervotes (blank votes), and overvotes (votes where someone marked two candidates). The CVR also records the source of these votes such as early voting, absentee/mail-in, at the poll, and provisional. The CVR and the ballot images are the records generated in connection with an election to memorialize the ballots cast.

The ballot image file may be exported as raw files or converted into a different file format as determined by the Election Management System. Formats such as PDF, TIF, PNG, and PBM are examples of popular image formats. Crucially, the file names could be changed making it difficult to ascertain the link with the CVR. This makes examination of the original file names mandatory to confirm the link with the actual voters, analogous to examining the original mortgage application, which was bundled into a CDO.

These ballot image files are imported into the higher jurisdiction's Election Management System from any and all voting system scanners or imaging components (for example: poll-site based, absentee count board-based, central-based) used at the local precinct level, including polling place scanners, and high-speed or other centrally-based scanners used for absentee vote counting.

The Cast Vote Record is usually maintained in the following digital file formats: XLSX, CSV, XML, or JSON. This makes it easy to import them into spreadsheets for later analysis.

The List of Vote Records (LVR), also called the Vote Cast Log, Cast Ballot Log, or other designation, is a record or set of records that consists of a spreadsheet, with each row displaying contents of one ballot, or contents of one Cast Vote Record (CVR). This record may consist of more than one file. (For clarity, here is a sample page of this record obtained from Hillsborough County, Florida, which may be viewed at this link: https://tinyurl.com/y2yl3hbp)

The electronic systems employ various computer algorithms during the tabulation process. One of the tabulations that can be done because votes are electronic is called the *Weighted Race feature*, which affords the capability to multiply a candidate's vote counts by a decimal factor. This means, the principle of "One Person, One Vote" can be violated. For example, if candidate A received 1,000 votes and candidate B received 1,000 votes, the Weighted Race technique can multiply candidate A's votes by a factor such as 2.5 and candidate B's by a factor of 0.8 to result in final tabulated vote counts for candidate A of 2,500 votes and candidate B of 800 votes, respectively.

Dr. Shiva's campaign filed Public Records Requests to various cities and towns, under MGL ch. 66, for (a) the list of participating voters – the list of those who actually voted in the election, and (b) the counts of the actual numbers of votes cast. Seven (7) of the fourteen

towns/cities provided the records.  In all seven (7) towns/cities, the number of tabulated votes was larger than the number of participating voters.  Boston had approximately 4,100 more votes than participating voters; and, Newton had approximately 1,700 more votes than participating voters.  Accessing and analyzing the ballot images – which are in the chain of custody of tabulating votes – therefore became critical to understanding the root cause of the discrepancy between Franklin county and the other counties.

Because of Dr. Shiva's engineering and mathematical background, he was able to determine that his votes had been multiplied by a factor of approximately 0.6 and his opponent's votes had been multiplied by a factor of approximately 1.4, which is what led likely led to 4,100 more votes being shown in Suffolk County than the actual number of voters. Auditing the actual ballot images, CVR and LVR, is thus crucial to the examination of the integrity of the electoral process in Massachusetts and undeniably vital to ensuring the fundamental constitutional guarantee of One Person, One Vote.

The evidence thus far indicates that in the Massachusetts 2020 U.S. Senate Primary it was a case of "One Person, Not One Vote."

On September 9, Dr. Shiva personally went to Secretary Galvin's office to deliver a Public Records Request to the Secretary, under MGL ch. 66, to determine whether or not the Secretary of State stored all ballot images, as it is these digital records generated in the course of a federal election, that are used to tabulate votes when ballots are electronically processed.  It is important to note that in all counties, other than Franklin County, the majority of paper ballots were simply collected and stored. In those counties, which primarily use electronic systems for tabulating votes, the ballot images *are* the ballots, since the ballot images are the objects upon which tabulation takes place.

Pursuant to Federal law, Galvin is required to securely store or retain for twenty-two (22) months any and all records generated in connection with an election for a Federal office, such as U.S. Senate. U.S. Code provides:

> CHAPTER 207 - FEDERAL ELECTION RECORDS
> 52 USC 20701: Retention and preservation of records and papers by officers of elections; deposit with custodian; penalty for violation
>
> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both. ( Pub. L. 86–449, title III, §301, May 6, 1960, 74 Stat. 88 .)
>
> 52 U.S.C. § 20702 - Theft, destruction, concealment, mutilation, or alteration of records or papers; penalties
> Any person, whether or not an officer of election or custodian, who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title to be retained and preserved shall be fined not more than $1,000 or imprisoned not more than one year, or both.

Galvin's office confirmed in writing that they ensure that the electronic ballot images, the very images used for electronically tabulating the vote count, are deleted by election officials in Massachusetts. Given that maintaining custody of the records and ensuring transparency and integrity of the electoral process is Defendant Galvin's day job, a responsibility he has held for twenty-five (25) consecutive years, the only possible conclusion is that Defendant Galvin fully intended to prevent even the possibility of a transparent audit and fully intended to cheat the citizens of their choice. In order to prevent this malign intent from being established as the

state's certified election result, this injunction is required. While elections have been decertified for various reasons and it is not unprecedented by any stretch, delaying certification until a hand-count of the paper ballots is complete is the better option. This was the step taken in 2008 in the case of the US Senate Race in Minnesota.

Courts have also decertified election results due to fraud. See

https://www.baltimoresun.com/maryland/baltimore-city/bs-md-ci-election-intervention-20160512-story.html

WHY A PRELIMINARY INJUNCTION MUST ISSUE ORDERING A PAPER COUNT<br>AND STAY OF CERTIFICATION OF THE ELECTRONIC VOTE COUNT

Secretary William Francis Galvin is being sued in this case in his official capacity in order to obtain from Federal court an injunction that enjoins him from certifying the electronic vote count without first conducting a transparent hand-count of the paper ballots cast for the September 2020 Republican primary vote and the 2020 U.S. Senate vote. This is permissible under the exception carved out by the Court for prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908)

The court must weigh four factors when deciding whether to grant injunctive relief: (1) The likelihood of success on the merits; (2) The potential for the movant to be irreparably harmed by denial of the relief; (3) The balance of the movant's hardship if relief is denied versus the nonmovant's hardship if relief is granted; and (4) The effect that granting relief will have on the public interest. *Phillip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir., 1998), *Monsanto v. Geertson*, 561 U.S. 139 (2010), *Trump v. Hawaii*, 585 U.S. ___ (2018), *Arborjet, Inc. v. Rainbow Treecare*, 794 F.3d 168 (1st Cir. 2015), *Planned Parenthood League v. Bellotti*, 641 F.2d 1006 (1st Cir. 1981)  These factors are easily met in this action.

1    <u>Likelihood of success on the merits favors the Plaintiff</u>

The facts of this case demonstrate that the Plaintiff here has a great likelihood of success

on the merits because the Defendant has already proved his intrinsic contempt for Federal law

and the Constitution. External control is mandatory. Only this court can impose it.

The US 1st Circuit Court of Appeals ruled in *Griffin v. Burns*, 570 F.2d 1065 (1st Cir.

1978) that a fresh primary election was necessary to ensure the binding principle that the voters'

choice must be respected and reflected in the choice of their representative.

"While the "outcome" test provides a sensible guideline for determining when federal
judicial invalidation of an election might be warranted [citations omitted], it is not a principle
requiring mathematical certainty. In cases of outrageous racial discrimination some courts have
chosen not to apply it at all, but to invalidate the election simply for its lack of integrity. . . .
Here, the closeness of the election was such that, given the retroactive invalidation of a
potentially controlling number of the votes cast, a new primary was warranted."

The 3rd Circuit ruled in its thoughtful and comprehensive decision in *Marks v. Stinson*,

19 F.3d 873 (3d Cir. 1994):

"The integrity of the election process lies at the heart of any republic. The people, the
ultimate source of governmental power, delegate to their elected representatives the authority to
take measures which affect their welfare in a multitude of important ways. When a representative
exercises that authority under circumstances where the electors have no assurance that he or she
was the choice of the plurality of the electors, the legitimacy of the governmental actions taken is
suspect. Accordingly, where there is substantial wrongdoing in an election, the effects of which
are not capable of quantification but which render the apparent result an unreliable indicium of
the will of the electorate, courts have frequently declined to allow the apparent winner to
exercise the delegated power. See, e.g., *Bell v. Southwell*, 376 F.2d 659 (5th Cir. 1967)."

All the Circuits as well as the US Supreme Court are united on this bedrock principle.

"Undeniably, the Constitution of the United States protects the right of all qualified
citizens to vote, in state as well as in federal elections. A consistent line of decisions by this
Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly
clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected
right to vote, *Ex parte Yarbrough*, 110 U.S. 651 [4 S.Ct. 152, 28 L.Ed. 274], and to have their
votes counted, *United States v. Mosley*, 238 U.S. 383 [35 S.Ct. 904, 59 L.Ed. 1355]."

*Reynolds v. Sims*, 377 U.S. 533, 554, 84 S.Ct. 1362, 1377-78, 12 L.Ed.2d 506 (1963)

In our case here, Plaintiff is not, yet, seeking that a fresh primary election be ordered. He merely seeks a stay of certification of the U.S. Senate race until a transparent hand-count of the paper ballots of the US Senate Primary race is completed, after being ordered by this court, as the only possible remedy and response to the revelation that the electronic ballot images that were used to generate the electronic vote count have been deliberately deleted by Defendant Galvin, in conscious violation of Federal law, in order to ensure that they are unavailable for a proper audit.

In these United States there is no choice but to stay certification of the electronic vote count and to order a hand-count of the paper ballots cast in both the Republican primary election as well as the US Senate election.

The Plaintiff, the candidate who has been consciously and willfully harmed in a most un-American fashion by Defendant Secretary Galvin, through conscious abuse of his official status and powers and in violation of an explicit Federal law which uses the words "shall retain," is assured of succeeding on the merits of his claim. Plaintiff's claim also meets the required plausibility standard. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Iannacchino v. Ford Motor*, 451 Mass. 623 (2008)

2      This political candidate has already been irreparably harmed

"These voting rights are potentially violated, however, whenever an individual is sworn in as an elected representative without a demonstration that he or she was the choice of a plurality of the electorate. This is so because the possibility is left open that some other candidate actually received more votes than the declared winner, which would mean that each of the votes cast for this other candidate was ignored." *Marks*, supra.

That *public demonstration* is impossible without a hand-count of the paper ballots because Galvin has consciously destroyed the electronic ballot images that were used to tabulate the electronic vote count. Defendant Galvin must be ordered by this court, as the only remedy

possible, to allow a transparent hand-count of the paper ballots from the Republic primary election in September 2020, as well as the US Senate election in November 2020, and that certification be stayed until the paper count is complete.

No other choice passes Constitutional muster as the Plaintiff here, one of two candidates in the Republican primary race, has already been harmed in all areas that reported an electronic vote count and has likely been cheated out of an election, as have his voters. This is a matter of foundational Constitutional importance.

3      Defendant Galvin faces no harm from an injunction

Galvin faces no harm whatsoever from being required by this court to further refrain from abusing his office to consciously violate bedrock Constitutional principles as well as Supreme Court rulings and 1st Circuit rulings. Galvin is already required by his oath of office to ensure a transparent **public demonstration** that the certified result is a true reflection of the people's choice and that all votes were counted fully. Without a paper ballot count that is impossible. *Ergo*, a paper ballot count is mandatory. *If Galvin actually cares about bedrock American principles of "one person, one vote," and that "all votes must be counted," he will not oppose this order at all*, especially given that Secretaries in other states, such as Florida, already preserve electronic ballot images. Again, no voluminous briefing is required for this court to follow hornbook law.

"Strong medicine is required to cure the Defendant's disrespect for the law." *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70 (1st Cir. 2000) The injunction must issue.

4      The requested injunction is in the public interest

It is in the public interest to uphold the rule of law and require elected officials to stop

abusing their office in order to throw an election and ignore the people's votes. It is in the public

interest to publicly demonstrate that the certified vote count reflects the true choice of the voters.

"The integrity of the election process lies at the heart of any republic. The people, the
ultimate source of governmental power, delegate to their elected representatives the authority to
take measures which affect their welfare in a multitude of important ways. When a representative
exercises that authority under circumstances where the electors have no assurance that he or she
was the choice of the plurality of the electors, the legitimacy of the governmental actions taken is
suspect. Accordingly, where there is substantial wrongdoing in an election, the effects of which
are not capable of quantification but which render the apparent result an unreliable indicium of
the will of the electorate, courts have frequently declined to allow the apparent winner to
exercise the delegated power." *Marks*, supra

To not order the hand count of paper ballots cast during the 2020 Republican Primary

would endorse the existence of "One Person but Not One Vote" that presently describes the

current situation in the Commonwealth of Massachusetts, unlike, for example, in the sunshine

State of Florida where the Secretary of State preserves electronic ballot images. In action by this

court will reintroduce *de facto* the standards endorsed by the *Dred Scott* decision all those years

ago of not treating all citizens as equal under the law. *Dred Scott v. Sandford*, 60 U.S. (19 How.)

393 (1857).  Presently, Florida has One Person, One Vote.  Massachusetts does not.

In order to comply with the Constitution, Supreme Court rulings and 1st Circuit case law,

the requested injunction must be issued, ordering Galvin to ensure a public, transparent hand-

count of the paper ballots cast in the September 2020 Republican primary election and to stay

certification of the U.S. Senate election result until that count is complete.

CONCLUSION

For the reasons detailed in this memorandum of law, the court must immediately issue

the requested stay order and order a transparent hand-count of the paper ballots cast in the 2020

Republican primary elections held in Massachusetts.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

_____

**Dr. Shiva Ayyadurai**
November 23, 2020

Plaintiff, *pro se*
701 Concord Ave, Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com