US DISTRICT COURT FOR MASSACHUSETTS

Case no. 1:20-CV-12080-MLW

Dr. SHIVA AYYADURAI,       )
        Petitioner,       )
                         )
        v.       )
                         )
WILLIAM F. GALVIN,       )
in his official capacity as       )
Secretary of State,       )
        Respondent.       )

PLAINTIFF'S MEMORANDUM CERTIFYING
THE BASIS OF RELATEDNESS BETWEEN GALVIN I AND GALVIN II

    When this case was initiated, the clerk assigned the case to Senior Judge Wolf on the basis of case relatedness. The Plaintiff had no objection. On November 25, 2020, Judge Wolf issued an Order requiring Plaintiff to promptly furnish a Memorandum on the issue of relatedness after conferring with counsel for the defendant.

    On November 27, 2020, the two parties conferred on this matter and defense counsel indicated that they do not agree that Galvin I and Galvin II are related cases although the parties are the same in both cases. AAG Hornstine stated that Galvin I is different from Galvin II because (I) is a money suit regarding violation of First Amendment rights and (II) is a suit for equitable relief. Both parties agreed to disagree on the issue of relatedness. This Memorandum follows.

1

THE LOCAL RULE ON RELATED CASES

**Local Rule 40 (g) Related Civil Cases.**

**(1) Definition of "Related" Civil Cases.**
For purposes of this rule, a civil case shall be deemed related to another civil case only if:
> (A) some or all of the parties are the same; and
> (B) one or more of the following similarities exist:
>> i. the cases involve the same or substantially similar issues of fact;
>> ii. the cases arise out of the same occurrence, transaction or property;
>> iii. the cases involve insurance coverage for the same property, transaction or occurrence.

**(3) Common Question of Law Not Sufficient.**
Civil cases, even when they involve some or all of the same parties, shall not be deemed related to each other solely on the ground that they:
> (A) involve the same or substantially similar challenges to a law, regulation, or government policy or practice; or
> (B) otherwise involve a common question of law.

**(4) Time Limitation.**
Civil cases shall not be deemed related if more than two years have lapsed since the closing of the earlier case.

**(5) Designation of Relatedness.**
If the plaintiff (or other party filing the initial pleading) believes that the case is related to any earlier filed case, whether or not the earlier case is still open (provided that not more than two years has elapsed since the closing of the earlier case), that party shall:
> (A) notify the clerk by notation on the civil category sheet indicating the title and number of the earlier filed case; and
> (B) file a written certification in the later-filed case specifically stating the basis for designating the two cases as related.
> (C) Unless good cause is shown, designation of relatedness by plaintiff (or other party filing the initial pleading) shall be made at the time of the filing of the initial pleading.

**(6) Objection to Designation of Relatedness or Lack of Designation of Relatedness.**
> (A) If the defendant (or other responding party) believes that a case that has been designated as related should not have been so designated, that party shall file a motion in the later filed case to return the case to the clerk for reassignment.
> (B) If the defendant (or other responding party) believes that a case that has not been designated as related should have been so designated, that party shall file a motion in the later filed case for the judge's consideration of transfer or reassignment of the case pursuant to Section i of this Rule.
> (C) Unless good cause is shown, objection to designation of relatedness or lack of designation of relatedness shall be made within 30 days of a responsive pleading being filed.

ARGUMENT

The November 25, 2020 Order cited three cases for discussion in this Memorandum - *Sherfey v. Johnson & Johnson*, Civil No. 12-4162 (EDPA, August 17, 2012, McLaughlin J.), *Soni v. Boston Medical Center*, 08-11874 (D. Mass. December 11, 2008, Gertner J.) and *Commission on Judiciary v. McGahn*, 391 F. Supp. 3d 116, 120 (D.D.C., August 14, 2019, Howell CJ.)

BOTH GALVIN I AND GALVIN II ARE INTIMATELY RELATED

The central allegation in Galvin I, **a civil RICO case**, is that Galvin destroyed electronic ballot images in conscious violation of Federal law with the intention of blocking an independent audit that would lay bare Galvin's active manipulation of the tabulation of electronic votes in order to throw the 2020 Republican Primary election to his preferred candidate, and then ***engaged in a racketeering enterprise to obstruct justice*** through violation of Plaintiff's protected political speech rights and active sabotage of Plaintiff's ability to campaign in his U.S. Senate race.

It is vital for this court to note that Galvin I also, contrary to Defendant Galvin's characterization, makes a claim for equitable relief in the form of a permanent injunction against Defendant Galvin silencing the political speech of either the Plaintiff or any other candidate for political office at any time in the future. Galvin has been sued in his *official* capacity in both cases.

The central allegation in Galvin II is that Galvin destroyed electronic ballot images in conscious violation of Federal law with the intention of blocking an independent audit that would lay bare Defendant Galvin's active manipulation of the tabulation of electronic votes in order to

3

throw the election to his preferred candidate, and that this reprehensible conduct intentionally violated the cherished principle of "One Person, One Vote."

In Galvin I this Plaintiff seeks monetary damages for the irreparable harm caused by Galvin through his RICO enterprise.

In Galvin II this Plaintiff seeks a court order to reverse Galvin's active manipulation of the tabulation of electronic votes in order to throw the election to his preferred candidate, and seeks this court to decertify the official electronic result announced by Galvin for the 2020 Republican Primary race. Decertification of the official Primary result automatically entails decertification of the general U.S. Senate race. See *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978)

Both cases are intimately linked to the same actions by Galvin. Only the relief sought is different. Thus, Galvin II could easily be joined with Galvin I. The reason Plaintiff, *pro se*, filed Galvin II separately instead of simply filing a new motion within Galvin I is because an element of urgency dictated that it not be subject to the scheduling order already issued in Galvin I, and to the practical mechanics of serving the individual out-of-state Defendants as well as dealing with Galvin's evasion of service in his individual capacity thus far (the Suffolk County Sheriff's Deputy reported difficulty leaving the summons at Galvin's home due to the presence of State Police Troopers at the site). The relief deservedly sought in Galvin II is too important and precious to be muddled up with the service antics in Galvin I.

Galvin II easily satisfies the plain text of LR 40(g)(1)(A), LR 40(g)(1)(B)(i) and LR 40(g)(1)(B)(ii), because Galvin is the common Defendant sued in his official capacity in both cases, because the central allegations in both cases are directly linked to Galvin destroying electronic ballot images in order to prevent an independent audit of the electronic vote count,

4

which satisfies the Rule's requirement that the cases "involve the same or substantially similar issues of fact" and that the "cases arise out of the same occurrence, transaction or property" which is Galvin's destruction of electronic ballot images in order to prevent an independent audit of the electronic vote result in the 2020 Republican Primary race. Full forensic analysis of Galvin's fraud is presented in Plaintiff's forthcoming Affidavit in support of the preliminary injunction in Galvin II.

These facts distinguish the relatedness issue in this case from *Sherfey* where the defendants claimed an intentional tort case was related to an ongoing product-liability MDL. The court properly determined that the cases were not related.

This case is also totally different from *McGahn* where the House claimed that its intent behind the issuance of a subpoena was related to the intent behind seeking Grand Jury records. The court correctly declared that the "purpose behind the House Judiciary Committee filing both actions, however, is insufficient to support a claim of relation because a litigant's reason for filing two cases begs the crucial question whether the two cases involve "common issues of fact."" One would be hard-pressed to locate two cases with a greater overlap of "common issues of fact" than Galvin I and Galvin II.

Again, this case is totally different from *Soni (11874)*, where the issue was the propriety of piecemeal litigation in both state and federal courts and Judge Gertner correctly remanded the case to state court where there already was ongoing litigation between the parties. Both Galvin I and Galvin II are properly filed in Federal court, within a very short time of each other, do not involve state claims, and do not share claims with any ongoing case in state court. This case is also distinguishable from *Soni (1:08-cv-11875-NG)* because both Galvin I and Galvin II involve the same Plaintiff and the same official-capacity Defendant and the same underlying actions by

5

Defendant Galvin in the Republican Primary race, in contrast to *Soni (11875)* which also include totally different claims against an unrelated defendant, namely Boston Medical Center.

### PLAINTIFF IS NOT ENGAGED IN JUDGE-SHOPPING

The Plaintiff here cannot credibly be accused of judge-shopping, the harm that underlies the local rule promoting random assignment of cases. Galvin I was filed when Plaintiff was represented by counsel and Plaintiff had no idea who the case had been assigned to until he was forced to proceed *pro se* and had to file a supplemental memorandum that his previous counsel had failed to timely submit. Plaintiff filed Galvin II after he was able to complete the mathematical forensic analysis of the reported voter data from the 2020 Republican Primary. If the analysis had been complete before Galvin I was filed, it would have been included in Galvin I.

Plaintiff properly indicated that Galvin I and Galvin II are related cases, because they undoubtedly are.

### CONCLUSION

Galvin I and Galvin II are intimately related to each other with almost 100% overlap of the fundamental facts related to Galvin's actions during the 2020 Republican Primary race. Galvin is sued in his official capacity in both cases as well. Both judicial economy and the interests of justice shall be served by both cases being handled together in the same court.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

November 30, 2020

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

CERTIFICATE OF CONFERRAL PER LR 7.1

Plaintiff certifies that he conferred with opposing counsel regarding the issue of relatedness and the plaintiff's position on the matter. Counsel for Galvin indicated they would file a 1-2 page response opposing both cases being handled in the same court.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

November 30, 2020

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com