UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. SHIVA AYYADURAI,<br><br>     Plaintiff,<br><br>    v.<br><br>WILLIAM FRANCIS GALVIN, in his official capacity as the Secretary of the Commonwealth of Massachusetts,<br><br>     Defendant. | CIVIL ACTION<br>NO. 1:20-cv-12080-MLW |

**OPPOSITION TO PLAINTIFF SHIVA AYYADURAI'S MOTION FOR PRELIMINARY INJUNCTION BY WILLIAM FRANCIS GALVIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE COMMONWEALTH**

MAURA HEALEY
ATTORNEY GENERAL

Anne Sterman (BBO No. 650426)
Adam Hornstine (BBO No. 666296)
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2048
Anne.Sterman@mass.gov
Adam.Hornstine@mass.gov

Dated: December 4, 2020

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

ARGUMENT ..........................................................................................................................5

I.      STANDARD OF REVIEW.........................................................................................5

II.     PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM. ...........6

        A.    Plaintiff's Claim is Moot Because the Election Results Have Been Certified. ................................................................................................... 6

        B.    The Sole Stated Legal Basis for Plaintiff's Claim Does Not Create a Private Right of Action. ........................................................................... 7

        C.    Plaintiff's Speculative Claim of Vote Manipulation is Unsupported by Fact or Law ........................................................................................ 9

III.    PLAINTIFF MAKES NO SHOWING OF IRREPARABLE HARM. ..............................12

IV.   AN INJUNCTION PREVENTING THE TIMELY CERTIFICATION OF AN ELECTION IS NOT IN THE PUBLIC INTEREST, AND THE EQUITIES DO NOT FAVOR PLAINTIFF....................................................................................................13

CONCLUSION............................................................................................................... 16

## INTRODUCTION

Plaintiff Shiva Ayyadurai ran for the Republican party's nomination for U.S. Senate in 2020. On September 1, 2020, he lost his primary election by approximately twenty percentage points. He did not seek a recount, although state law provided him a vehicle to do so. Nor did he notice an election contest, as state law also allowed him to do. Instead, nearly three months after the primary election, and three weeks after the general election, he asks this Court to interfere with the administration of a state election by creating a private cause of action where none exists so as to stop Secretary of the Commonwealth William F. Galvin from certifying the results of the Senate race – even though the Secretary is not the state official charged with certifying election results. He seeks this significant and untimely remedy in conjunction with a similarly untimely request for an order to hand recount of the ballots from the September 1, 2020 primary, even though the deadline for doing so has long since passed, the results of the election have now been officially certified by the Governor's Council, and his request is based on a fundamental misunderstanding of how ballots are marked, tabulated, and maintained by the Commonwealth.

The Court should not indulge this extraordinary request but should deny this motion for preliminary injunctive relief because: (1) Plaintiff's request is moot because the election results have now been certified by the Governor and Council;[1] (2) the sole legal claim in this suit does not provide a private right of action; (3) Plaintiff's fact-free claim about vote manipulation and ballot destruction is simply wrong; and (4) the balance of equities tips in the Commonwealth's

---

[1] The Governor and Council, not the Secretary, are responsible for certifying the results of the general election under Massachusetts state law. See Mass. Gen. Laws Ann. ch. 54, § 115.

1

favor because Plaintiff delayed for months in bringing this claim, even though he had mechanisms available to him under state law to seek a recount or contest the election.

## FACTUAL BACKGROUND

**Plaintiff's Allegations**

Plaintiff Shiva Ayyadurai ran unsuccessfully for the Republican party's nomination for U.S. Senate in the September 1, 2020 Massachusetts primary election.  Plaintiff's Memorandum of Law in Support of Emergency Motion for Preliminary Injunction (hereinafter "Pl. Memo."), p. 1.  Following his loss during the September 1 primary election, which Plaintiff alleges was contrary to his internal polling that showed him leading in all counties in the Commonwealth, Plaintiff's campaign submitted public records requests in various cities and towns across the Commonwealth seeking the list of voters who participated in the primary in each of those cities and towns.  Pl. Memo., p. 3. Plaintiff alleges that in all of the seven cities/towns that provided data in response to his campaign's request, the number of tabulated votes exceeded the number of voters shown to have voted.  Pl. Memo., p. 4.  Based on his alleged engineering and mathematical expertise – and without any admissible evidentiary support – Plaintiff allegedly determined that his votes had been multiplied by a factor of approximately 0.6, and his opponent's votes had been multiplied by a factor of approximately 1.4.  Pl. Memo., p. 4.  He further alleges that the electronic tabulation equipment used by many municipalities creates ballot images, but that the Secretary's office has confirmed that it deleted those ballot images in violation of federal law and with an intent to "cheat the citizens of their choice."  Pl. Memo., p. 2-5.  As a result, he alleges that the paper ballots from the September 1, 2020 primary must be hand audited, and he asks this court to enjoin the certification of the November 3, 2020 election and order that hand audit to proceed.  Pl. Memo., p. 10.  The reality, however, is far different.

**<u>Voting Machines in Massachusetts Elections</u>**

The admissible evidence in the preliminary record instead shows that every voter in Massachusetts state and federal elections marks a paper ballot, whether by hand or by use of special adaptive equipment used by disabled voters, and those paper ballots are the official vote cast by that voter.  Affidavit of Michelle K. Tassinari (hereinafter "Tassinari Aff."), ¶¶ 6, 10.  Paper ballots are the official record of votes cast in Massachusetts elections, and they are stored by municipalities for 22 months after a federal election in accordance with federal law.  Tassinari Aff., ¶ 10.  Municipalities in Massachusetts tabulate the votes recorded on those paper ballots in one of two ways: by hand-counting, or by use of an electronic tabulator.  Tassinari Aff., ¶¶ 6-7.  No ballot images are generated, and no weighted calculation function is used.  Tassinari Aff., ¶ 10.

Pursuant to state law, the Secretary's office is charged with certifying equipment used in Massachusetts elections, and only equipment so certified may be used.  Mass. Gen. Laws. ch. 54, § 37; 950 CMR 50.00.  In order to obtain certification by the Secretary's office, equipment must be submitted for an office demonstration and used successfully in two field tests.  Tassinari Aff., ¶ 10.  During the office demonstration, staff from the Secretary's Elections Division mark multiple ballots, tally those votes by hand, deposit them into the tabulator, and then compare the hand count to the machine count for accuracy and to ensure there are no anomalies.  Id.

Only four electronic tabulator machines are certified for use in Massachusetts elections: two types of optical scanning machines (AccuVote and Optech), and two types of digital scanning machines (ImageCast and DS200).  Tassinari Aff., ¶ 7.  Optical scanning machines are not capable of making, storing, or transmitting images of ballots; they simply scan paper ballots for marked vote indicators and tabulate those vote indicators.  Tassinari Aff., ¶ 9.  Digital

3

scanning machines have the technological capability to make and store images, but the Secretary's certification of those machines for use in Massachusetts elections is conditioned upon those functions being disabled.  Id.  With this functionality turned off, the digital scanners operated similarly to the optical scanners by reading the vote indicators marked on the paper ballot.  Id.  The Secretary's office confirmed with the vendors of those machines that the scanning functionality was disabled for both the September 1 primary and the November 3 general election.  Id.  Therefore, no voting equipment used in Massachusetts creates or stores ballot images.  Id.  Voting equipment used in Massachusetts elections must meet not only the Secretary's certifications standards but also federal standards, which are certified by an independent testing lab, that require recording each vote precisely as indicated by the voter and producing an accurate report of all votes cast, without "weighting" votes.  Id.

By regulation, all voting machines used in Massachusetts elections are tested before every election.  Tassinari Aff., ¶ 12.  The testing requires local election officials to mark at least 50 ballots for each precinct (in a primary, they must mark at least 50 ballots per party per precinct), which must be hand counted and then deposited into the tabulator.  Id.  The results of the hand count are then compared to the results of the machine count.  Id.  This testing process is performed in public and notice is posted at least 3 days in advance.  Id.  If the testing process reveals any problems, including tabulation errors or mechanical failures, the local election officials must report those errors to the Secretary's office.  Id.  No such reports were made to the Secretary's office for either the September 1 primary or the November 3 general election.  Id.

**2020 Post-Election Audit**

In addition to the testing and certification process for tabulators, the accuracy and integrity of Massachusetts general election results are tested by a post-election audit as required

by Mass. Gen. Laws ch. 54, § 109A.  This audit is performed by conducting a public, non-computerized, random drawing to select 3% of precincts statewide to hand count ballots and compare those results to the previously-calculated results.  Id.; 2020 Post-Election Audit Report Narrative, http://sec.state.ma.us/ele/elepostelection/2020-Audit-Report-Narrative.pdf, November 23, 2020, p. 1.  That drawing must occur within 48 hours of the close of polls on Election Day. Id.  This year, that drawing took place on November 5, 2020.  2020 Post-Election Audit Report Narrative, p. 1.  As required by law, the selected precincts hand counted their ballots for offices of Electors for President and Vice President, Senator in Congress, Representative in Congress, Senator in General Court, and Representative in General Court, as well as one of the state-wide ballot questions.  Id.  A post-election audit report was published containing the results of the audit.  Id.  Overall, the audit found that in 47 of the 66 audited precincts, there was no change in the number of ballots cast; in the remaining precincts, the small disparities found were attributed to tabulator jams and/or poll worker error.  Id. at 2.  Relevant to Plaintiff's claims, this year's audit resulted in candidate Markey receiving an additional 81 votes, candidate O'Connor receiving 28 fewer votes, and Plaintiff receiving 88 additional votes.  Id.  The report noted that:

> The number of votes reported on Election Night as "All Others" was reduced by 60 and the blank votes were reduced by 81. It is likely that write-in candidate SHIVA AYYADURAI gained additional votes during the audit that were on ballots not segregated by the tabulator because voters did not fill in the vote indicator next to the write-in space, and poll workers failed to categorize write-in votes for the candidate separately from "All Others."

Id.

## ARGUMENT

### I.   STANDARD OF REVIEW.

The Court should deny the motion for injunctive relief because Plaintiff fails to carry his substantial burden to demonstrate an entitlement to the "extraordinary and drastic remedy" he

5

seeks.  Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (noting that a "preliminary injunction is an 'extraordinary and drastic remedy'") (citation omitted).  A preliminary injunction "is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008).  Rather, Plaintiff must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  See Díaz-Carrasquillo v. García-Padilla, 750 F.3d 7, 10 (1st Cir. 2014) (outlining four elements for consideration of motion for preliminary injunction).  The last two factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009).  Because Plaintiff cannot carry his substantial burden to make a "clear showing," Mazurek v. Armstrong, 520 U.S. 968, 972 (1997), that he is entitled to preliminary injunctive relief, his motion should be denied.

## II.   PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM.

### A.   Plaintiff's Claim is Moot Because the Election Results Have Been Certified.

Plaintiff seeks through his motion an injunction preventing the Secretary from certifying the results of the Senate election.  But on November 25, 2020, the Governor's Council certified the final results of this election, declaring that Senator Edward J. Markey had won the state's U.S. Senate election.  Tassinari Aff., ¶ 27.  Further, on November 30, 2020, the Governor signed a Certificate of Election, attested to by the Secretary, stating that Edward J. Markey was duly elected to the United States Senate.  Tassinari Aff., ¶ 28.  That certificate was transmitted to the President of the Senate on December 1, 2020, in accordance with federal law and Senate Rules.  Where, as here, Plaintiff fails to identify an ongoing dispute that can be rectified by an injunction, his request for injunctive relief is moot and should be denied on this basis.  This Court's jurisdiction under Article III extends only to "Cases" and "Controversies." U.S. Const. Art. III, § 2, cl. 1.  A lawsuit becomes moot—and thus no longer a case or controversy subject to

6

federal court jurisdiction—when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) ("ACLU"). "Another way of putting this is that a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing party." Id. To remain subject to federal court jurisdiction, "a dispute 'must be extant at all stages of review, not merely at the time the complaint is filed.'" United States v. Sanchez-Gomez, 138 S. Ct. 1532, 1537 (2018). "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." Genesis HealthCare Corp. v. Symczyk, 569 U.S. 66, 71 (2013). Because the certification he seeks to enjoin has already taken place, Plaintiff identifies no ongoing or current dispute that could be enjoined by this Court; his claim for injunctive relief is thus moot and should be denied.

      **B.    The Sole Stated Legal Basis for Plaintiff's Claim Does Not Create a Private Right of Action.**

In his Complaint and motion for preliminary injunction, Plaintiff claims that he is suing pursuant to 52 U.S.C. §§ 20701-20702, but these two criminal statutes do not afford Plaintiff a basis for suing in federal court. Accordingly, the Court should deny Plaintiff's motion for preliminary injunctive relief because the stated basis for relief fails to provide Plaintiff with a vehicle for bringing this civil suit.

The first statute Plaintiff cites requires, in relevant part, that every "officer of election" must "retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of … Member of the Senate … are voted for." 52 U.S.C. § 20701. Willful failure to comply with this section can be punished by a fine not to exceed $1,000 or with imprisonment for a term less than one year. Id. The second

7

law Plaintiff cites reinforces the first, providing that any person who "willfully steals, destroys, conceals, mutilates, or alters any record or paper" as required by Section 20701 can be fined not more than $1,000 or imprisoned for not more than one year.  52 U.S.C. § 20702.  Both laws provide criminal sanctions for willful violation of the preservation requirement of Section 20701.  Neither statute, however, provides that a private plaintiff may sue to enforce it.  Where a statute provides no private right to sue, the Court cannot infer one.  The failure to identify a permissible private cause of action is fatal to Plaintiff's claim.

In Alexander v. Sandoval, 532 U.S. 275 (2001), the Supreme Court held that "private rights of action to enforce federal law must be created by Congress." Id. at 286.  When a statute does not provide an express private cause of action, courts "must interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Id.  Unless Congress intends to create a private right of action, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 286-87.  In other words, "a private right of action under federal law is not created by mere implication, but must be 'unambiguously conferred.'" Allco Renewable Energy Ltd. v. Massachusetts Elec. Co., 875 F.3d 64, 69–70 (1st Cir. 2017) (citation omitted).

Where, as here, Congress gave the federal government the power to enforce these statutes through criminal sanctions – but failed to give private citizens the ability to sue under them – Congress did not intend to create a private right of action under this law.  See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (noting that criminal civil rights statutes "do not give rise to a civil action for damages").  Plaintiff cannot sue to rectify any alleged violation of these criminal laws, and he is therefore unlikely to succeed on the merits of this suit because this Court lacks

8

jurisdiction. See Bonano v. E. Caribbean Airline Corp., 365 F.3d 81, 83 (1st Cir. 2004) (noting that the existence of a federal cause of action is the "linchpin of federal jurisdiction").

### C. Plaintiff's Speculative Claim of Vote Manipulation is Unsupported by Fact or Law

The extraordinary relief that Plaintiff seeks should not be granted for the additional reason that his evidence-free allegations of statewide voter fraud perpetrated by manipulation of electronic ballot files is based upon several fundamental misunderstandings and misrepresentations as to how votes are cast, tabulated, and stored in Massachusetts. Simply put, Plaintiff is not entitled to preliminary relief here because he is unlikely to succeed in proving the merits of his claim. Massachusetts did not destroy ballots or otherwise engage in mathematical manipulation of vote results, as Plaintiff hypothesizes without any proof. The 2020 primary and general elections were safe, secure, and fair.[2] Plaintiff lost his primary election and failed to win as a write-in candidate in the general election. Having failed to avail himself of state law recount procedure, he cannot now achieve the same result by making baseless allegations of vote-counting fraud in federal court.

Contrary to Plaintiff's un-cited assertion, no voter in Massachusetts votes by touch-screen equipment. Every voter marks a paper ballot, whether by hand or by use of special adaptive equipment used by disabled voters, and those paper ballots are the official vote cast by that voter. Tassinari Aff., ¶¶ 6, 10. Paper ballots are the official record of votes cast in Massachusetts elections, and they are stored by municipalities for 22 months following each federal election in accordance with federal law. Tassinari Aff., ¶ 10. Municipalities in Massachusetts tabulate the

---

[2]   See Cybersecurity & Infrastructure Security Agency, #Protect2020 Rumor vs. Reality, https://www.cisa.gov/rumorcontrol; Balsamo, Michael, Associated Press, Disputing Trump, Barr says no widespread election fraud, https://apnews.com/article/barr-no-widespread-election-fraud-b1f1488796c9a98c4b1a9061a6c7f49d (Dec. 1, 2020).

votes recorded on those paper ballots in one of two ways: by hand-counting, or by use of an electronic tabulator. No ballot images are generated, and no weighted calculation function is used. Tassinari Aff., ¶ 9.

The electronic tabulators used in Massachusetts meet stringent federal and state certification standards. Tassinari Aff., ¶ 10. In Massachusetts, even the certified tabulators that are capable of creating ballot images – which is not every type of tabulator used in Massachusetts – must have that function disabled. Id. The Secretary's Election Director has verified that any image scanning function was, in fact, disabled for both the September 1 primary and November 3 general election. Id. Every type of approved tabulator was subjected to testing and a demonstration of accuracy before it was approved for use in Massachusetts. Tassinari Aff., ¶ 8. Every tabulator across the Commonwealth was publicly tested to ensure that it calculated results consistent with a hand-count before both the September 1 primary and the November 3 general election. Tassinari Aff., ¶ 12. Plaintiff's creative reverse-engineering and mathematical calculations notwithstanding, there is no basis in fact for his contention that ballot images were created and deleted, nor is there any basis in fact for his contention that the results were altered by application of some weight multiplier, nor does he offer any explanation of why such shenanigans would not have been laid bare in the extensive public testing process.[3]

Plaintiff's outlandish assertions are further belied by the results of the 2020 post-election audit, in which general election ballots from 3% of Massachusetts precincts, selected at random, were hand-counted. As required by law, the selected precincts hand counted their ballots for

---

[3] To the extent Plaintiff speculates that election fraud must have occurred because his campaign's internal polling disagreed with the results of the primary election itself, this contention is logically flawed. A campaign's polling results based on samples of the electorate do not equal votes cast by voters in an election. Only the latter counts.

offices of Electors for President and Vice President, Senator in Congress, Representative in Congress, Senator in General Court, and Representative in General Court, as well as one of the state-wide ballot questions.  Tassinari Aff., ¶ 15.  A post-election audit report was published containing the results of the audit.  See https://www.sec.state.ma.us/ele/elepostelection/2020-Audit-Report-Narrative.pdf.  Overall, the audit found that in 47 of the 66 audited precincts, there was no change in the number of ballots cast; in the remaining precincts, the small disparities found were attributed to tabulator jams and/or poll worker error.  Tassinari Aff., ¶ 15.  Relevant to Plaintiff's claims, this year's audit resulted in candidate Markey receiving an additional 81 votes, candidate O'Connor receiving 28 fewer votes, and Plaintiff receiving 88 additional votes.  Tassinari Aff., ¶ 19.  The report noted that:

> The number of votes reported on Election Night as "All Others" was reduced by 60 and the blank votes were reduced by 81. It is likely that write-in candidate SHIVA AYYADURAI gained additional votes during the audit that were on ballots not segregated by the tabulator because voters did not fill in the vote indicator next to the write-in space, and poll workers failed to categorize write-in votes for the candidate separately from "All Others."

Tassinari Aff., ¶ 19.  Notably, the audit results did not differ from the initial results in any systemic or consistent basis that could be attributable to illegal tabulation methods such as the use of weighted calculations.  Tassinari Aff., ¶ 20.

In a further effort to discredit the tabulation of election results from the September 1 primary, Plaintiff alleges that in response to public records requests, he received information from seven cities and towns indicating that the number of voters in those municipalities who participated in the election and the number of votes cast did not match.  Pl. Memo., pp. 3-4.  Specifically, he asserts that in all seven cities and towns who provided data, the number of tabulated votes was larger than the number of participating voters.  Pl. Memo., pp. 4.  He alleges that "he was able to determine" that these disparities are explained by a weighted calculation

11

having been performed, such that his votes were discounted and his opponent's votes were augmented.  Pl. Memo., p. 4.  He offers no factual basis to support his remarkable assertion that votes were altered in this manner, and none exists.  Plaintiff's undisclosed mathematical computations ignore the simpler factual explanation for these numerical disparities: that at the time he obtained the information, the relevant cities and towns had not completed the process of updating the electronic records of who had voted based on the paper lists kept at polling places, rendering the electronic records incomplete.[4]  Tassinari Aff., ¶¶ 22-24.  In addition, there are inevitably small disparities between these two numbers that are attributable to human error and/or election officials failing to record which ballot is taken by unenrolled voters.  Tassinari Aff., ¶ 23.  Wild, unsupported speculation as to multipliers that were applied cannot, without more, justify excusing Plaintiff from his failure to pursue his state law remedy to seek a recount.

### III.     PLAINTIFF MAKES NO SHOWING OF IRREPARABLE HARM.

Plaintiff's motion also fails to demonstrate that he will be irreparably harmed if this motion is denied.  Plaintiff will suffer no harm if this Court denies this effort to stop the certification of the election results as the results have already been certified.  There is, therefore, no need to preserve the status quo, because the alleged harm that Plaintiff identifies – certification of the election results – has already come to pass.  Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects."); see also CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 48 F.3d 618, 620 (1st Cir. 1995) (noting that "The purpose of a preliminary injunction is to preserve the status

---

[4]     Plaintiff did not in any of his public records seek certified copies of voting records, and he did not review the paper lists, which are the official records.

quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs.").

Moreover, Plaintiff's delay in seeking this relief – and his unexplained refusal to avail himself of any of the recount mechanisms available to him under state law – undercut any allegation of irreparable harm.[5]  See Voice of the Arab World, 645 F.3d at 36 (plaintiff's "leisurely pace and lack of urgency undercut a presumption of irreparable harm"); Akebia Therapeutics, Inc. v. Azar, 443 F. Supp. 3d 219, 231 (D. Mass.), aff'd, 976 F.3d 86 (1st Cir. 2020) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.").  In light of Plaintiff's months-long delay in bringing this suit, his claim of irreparable harm rings hollow.

### IV. AN INJUNCTION PREVENTING THE TIMELY CERTIFICATION OF AN ELECTION IS NOT IN THE PUBLIC INTEREST, AND THE EQUITIES DO NOT FAVOR PLAINTIFF.

The extraordinary relief Plaintiff seeks threatens the orderly administration of the general election by necessarily delaying the timely certification of the results of November's election. Because this threat is caused solely by Plaintiff's inexplicable delay in bringing this action, his requested relief should be denied.  See Voice of the Arab World, 45 F.3d at 35 (citations omitted); see also Hotze v. Hollins, 4:20-cv-03709, 2020 WL 6437668, at *3 (S.D. Tex. Nov. 2, 2020) (noting that delay in seeking review of election-related issues is an equitable consideration for Court).  Plaintiff now asks this Court to stop the certification of the results from the

---

[5]  Contrary to Plaintiff's assertion, parties timely seeking recounts under state law can request that ballots be recounted by hand under Mass. Gen. Laws ch. 54, § 135.

November general election for the state's United States Senate seat so that he can obtain a recount for the September 1, 2020 primary election that he lost months ago.

State law – not federal law – provided Plaintiff with several remedies if he felt there was an error in vote tabulation requiring a recount, but the time for requesting such remedies has long since passed.  First, Plaintiff could have sought a recount after the September 1, 2020 primary election.  Mass. Gen. Laws ch. 54, § 135 sets forth the prerequisites and deadlines for seeking a recount of the sort Plaintiff now wants this Court to order, nearly three months after the primary election and some three weeks after the general election.  For the September 1, 2020 primary, any recount would have to be requested by September 4, 2020.  See 2019 Mass. Stat. ch. 142, § 88.  Requesting a state-wide or district-wide recount requires that the requesting candidate have received enough votes to be within one-half of one percent of the number of votes received by the winner, and have submitted a petition signed by one-fourth of the number of voters required to sign nomination papers for state primary candidates.  Tassinari Aff., ¶ 21.  However, a precinct-level recount may be requested regardless of the size of the vote differential, and simply requires timely obtaining and submitting 10 signatures from registered voters in each precinct of a town or ward of a city in which he seeks a recount, except in Boston, where the signatures of 50 registered voters per precinct is required.  Id.  Plaintiff did not timely avail himself of this option to seek a recount, in which he could have requested those ballots be counted by hand.  Second, Plaintiff also could have started the process of contesting the September 1, 2020 primary election within 30 days pursuant to Mass. Gen. Laws ch. 54, § 134.  This statute provides that any "person who has received votes for any office at an election" may "within thirty days thereafter" announce an intention to contest an election; state courts of general jurisdiction are

14

then empowered to review ballots from the election to decide the contest. Id. Again, Plaintiff failed to file a timely election contest pursuant to this statute.

Having failed to avail himself of these potential remedies provided by state law, Plaintiff cannot now ask the Court to absolve him of his responsibility to comply with state law and order the very remedy he failed to avail himself of earlier. Where Plaintiff failed to exercise his rights under state law to request a prompt recount or to timely contest the results of the September 1, 2020 primary, he cannot now do so through a federal suit in equity. Plaintiff's delay undercuts his claimed entitlement to equitable relief, as "the law ministers to the vigilant[,] not to those who sleep upon perceptible rights." K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914 (1st Cir. 1989) (citation omitted).

Plaintiff's request is also not in the public interest. Federal courts have frequently recognized that state elections should generally be left to the states to resolve. "Election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts." Bonas v. Town of North Smithfield, 265 F.3d 69, 74 (1st Cir. 2001). Although the right to vote in a state election is in the final analysis bottomed on federal law, Reynolds v. Sims, 377 U.S. 533 (1964), that right is "properly limited by respect for the political and federal framework established by the Constitution. This framework [in the first instance] leaves the conduct of state elections to the states." Gamza v. Aguirre, 619 F.2d 449, 453 (5th Cir. 1980) (citing Oregon v. Mitchell, 400 U.S. 112, 124–29 (1970)). It is not appropriate for this Court to interfere with a state's election results, particularly where Plaintiff could have potentially obtained the remedy he now seeks had he promptly exercised his rights under state law. The Commonwealth conducted the general election relying on Plaintiff's decision not to seek a timely recount, as permitted under state law. As the state's Supreme

Judicial Court has recognized, "[d]eadlines are also a necessary part of the election process, particularly the primary election, which must be completed in a timely fashion to set the stage for the general election." Grossman v. Sec'y of the Commonwealth, 485 Mass. 541, 550 (2020). Plaintiff should not now be rewarded for his delay.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion for preliminary injunctive relief.

Respectfully submitted,

Defendant,

WILLIAM FRANCIS GALVIN, in his official capacity,

By his attorneys,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Adam Hornstine
Anne Sterman (BBO No. 650426)
Adam Hornstine (BBO# 666296)
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2048
Anne.Sterman@mass.gov
Adam.Hornstine@mass.gov

Date: December 4, 2020

16

## CERTIFICATE OF SERVICE

      I, Adam Hornstine, Assistant Attorney General, hereby certify that I have this day, December 4, 2020, served the foregoing **Memorandum**, upon all parties, by electronically filing to all ECF registered parties, and paper copies will be sent to those indicated as non-registered ECF participants.

                                           /s/ Adam Hornstine
                                           Adam Hornstine