US DISTRICT COURT FOR MASSACHUSETTS

Case no. 1:20-CV-12080-MLW

Dr. SHIVA AYYADURAI,  )
          Petitioner,    )
                      )
          v.          )
                      )
WILLIAM F. GALVIN,  )
in his official capacity as  )
Secretary of State,      )
          Respondent.  )

### PLAINTIFF'S REPLY TO GALVIN'S OPPOSITION TO THE MOTION FOR A PRELIMINARY INJUNCTION

Galvin's opposition states: "The Court should not indulge this extraordinary request but should deny this motion for preliminary injunctive relief because: (1) Plaintiff's request is moot because the election results have now been certified by the Governor and Council; (2) the sole legal claim in this suit does not provide a private right of action; (3) Plaintiff's fact-free claim about vote manipulation and ballot destruction is simply wrong; and, (4) the balance of equities tips in the Commonwealth's favor because Plaintiff delayed for months in bringing this claim, even though he had mechanisms available to him under state law to seek a recount or contest the election."

Plaintiff rebuts each of these false statements as follows:

### REBUTTAL 1: PLAINTIFF'S REQUEST IS NOT MOOT

Galvin has provided this court with a copy of the certificate signed by Governor Baker that states that Edward Markey is the state's selection to occupy a seat in the U.S. Senate. Galvin claims that this action, certification, is final, set in stone as it were, and automatically makes the motion moot.

Galvin, the Chief Election Officer for Massachusetts for 25 years now, fully knew that was a false statement when he peddled it to this court. Galvin is aware, as are all persons conversant with the history of elections held for the U.S. Senate, that certification by the Governor is easily reversed and has been done so on many occasions.

Plaintiff reminds this court of the events surrounding the 1974 race for U.S. Senate conducted in New Hampshire.  Republican Louis Wyman ran against Democrat John Durkin for the seat previously occupied by Norris Cotton, who chose to retire.  Initially Wyman was certified by the Governor as the next Senator. After a recount Wyman was decertified and the Governor certified Durkin. After a second tabulation, Durkin was decertified and the Governor certified Wyman. Finally the U.S. Senate declared the seat vacant and a fresh special election was held.

https://www.senate.gov/artandhistory/history/minute/Closest_election_in_Senate_history.htm

The 1974 U.S. Senate race holds the record for the closest U.S. Senate race ever, dragged on for eight full months, and involved not one by two decertifications.  It beggars belief that a professional election official of 25 years standing did not remember this famous fact prior to peddling his false claim to this court.  And, we are talking about events from 1974, not 1874.

This court has already objected on the record to the current Attorney General playing fast and loose with the law when filing briefs with this court. Nothing has objectively changed.

```
          MR. HORNSTINE:  I agree, but it primarily proceeds

     from the damages piece, and I'm happy to move on.

          THE COURT:  It doesn't say that.  You're happy to move

     on.  Frankly, I'm not.  You represent the government.  You

     should always be accurately describing the law.  But here

     you've got a pro se litigant on the other side.  And, you know,

     we're talking about the nuances of constitutional law, and the

     case is going very quickly.
```

In addition, when not just innocent errors in paper ballot tabulation, as in the 1974 New Hampshire vote, but active intentional fraud has been shown via mathematical analyses in a sworn affidavit, certification by the Governor means nothing *per se*. The U.S. 1st Circuit Court of Appeals ruled in *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) that a fresh primary election was necessary to ensure the binding principle that the voters' choice must be respected and reflected in the choice of their representative. This *stare decisis* is from 1978, not 1878.

> "Accordingly, where there is substantial wrongdoing in an election, the effects of which are not capable of quantification but which render the apparent result an unreliable indicium of the will of the electorate, courts have frequently declined to allow the apparent winner to exercise the delegated power."
> *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994)

Thus, as a matter of fact and law, as Galvin already knew when he chose to peddle his untruth to this court, mere certification by the Governor does not make Plaintiff's motion moot.

REBUTTAL 2: PLAINTIFF DID NOT RELY ON 52 USC 20701
AS HIS CAUSE OF ACTION

Galvin's false claim that Plaintiff relies on a U.S. Code as his cause of action is conscious misdirection that has no basis in fact. While it is Galvin who is deeply worried, for the first time in 25 years that he may face a year in prison for each time he violated 52 USC 20701, and

3

reacted instantly to shut Plaintiff's speech down on Twitter as soon as Plaintiff raised this point

publicly, Plaintiff, despite being an engineer and scientist representing himself *pro se*, fully

knows that 52 USC 20701 provides him no private cause of action.

This knowledge led Plaintiff to file a criminal complaint with U.S. Attorney Andrew

Lelling, because Plaintiff already knew that only a public prosecutor has the authority to indict

Galvin for violation of 52 USC 20701.

There is not one single sentence within Plaintiff's amended complaint in case 11889 or in

the complaint in case 12080 or in his motion for a preliminary injunction in case 12080 that

declares Plaintiff's reliance on 52 USC 20701 for a private cause of action. The only time

Plaintiff ever mentions 52 USC 20701 is to cite the actual Federal law that requires Galvin to

preserve all records. Even so, this case is not about suing Galvin over preservation of records, it

is about electronic manipulation of the vote counts. Plaintiff has furnished this court with a

detailed affidavit detailing the mathematical analysis, which shows how the manipulation was

done. None of this has anything to do with 52 USC 20701.

Galvin is fully aware that his assertion is materially false and "could not have been

calculated to assist the Court in the administration of justice, but only to win an advantage."

*Tesco Corp. v. Weatherford Int'l, Inc.*, No. H-08-2531, 2014 WL 4244215 (S.D. Tex. 2014)

Thus, as a matter of law and fact, Plaintiff does not rely on 52 USC 20701 to supply him

with the cause of action to bring this case.


REBUTTAL 3: GALVIN IS REQUIRED TO PRESENT MATHEMATICAL
ANALYSES AND NOT THE BALD ASSERTION THAT PLAINTIFF IS
"SIMPLY WRONG"

Plaintiff submitted a 41-page sworn affidavit to this court documenting the mathematical proof

that Galvin had manipulated the vote counts using a computer algorithm that multiplied votes for

the Plaintiff by a factor of 0.666 and votes for O'Connor by a factor of 1.22 in order to arrive at

the official reported result, and that there was no other way the precincts that tabulated votes

electronically would have been associated with a bizarre High-Low distribution pattern that has a

**One-in-100,000 chance** of occurring randomly in elections.

This automatically required Galvin to present a sworn affidavit with mathematical data to

rebut these findings. And to do so in every county, as presented in Plaintiff's affidavit.

Galvin is unable to do so.

Galvin thus chose to baldly assert that "Plaintiff's fact-free claim about vote manipulation

and ballot destruction is simply wrong" as if this court would forget a detailed mathematical

sworn affidavit. Fact-free? Simply wrong?

Plaintiff understands that in the legal system we can have cases with dueling experts with

the judge acting as finder of fact and deciding which expert the court finds more credible, but for

Galvin to simply make a conclusory assertion without even a fake unqualified expert or any

pretense of a mathematical rebuttal, and to expect it to overrule a mathematical affidavit simply

because Galvin has been the Secretary of the Commonwealth for 25 years, is legally

unacceptable.


REBUTTAL 4: BECAUSE OF SUBSTANTIATED ALLEGATION OF SYSTEMIC
FRAUD THE BALANCE OF EQUITIES IS OVERWHELMINGLY IN THE
PLAINTIFF'S FAVOR

Once again Galvin claims that Plaintiff should simply have asked Galvin to perform a recount

and simply swallow the result even though by that point Plaintiff already suspected that Galvin

had manipulated the vote count. Plaintiff's 41-page affidavit described the process of asking

Galvin for a recount: "*A simple analogy would be to request a photograph from Galvin and*

***him producing a Photoshopped picture each time and claiming it is the original, knowing that***

***he himself has deleted the original, in order to conceal the fact that he himself Photoshopped***

***that image***."

Galvin has chosen to ignore that explicit analogy in an affidavit and again peddle the

false assumption that a recount would actually have had some basic integrity. Because that

assumption is untrue, Galvin's claim of delay and untimeliness is merely opportunistic and lacks

merit. Plaintiff's 41-page affidavit details why it took three months to finally state a supported

claim against Galvin's fraudulent vote count.

As noted previously, a credible allegation of fraud substantiated by mathematical proof in

a sworn affidavit that remains mathematically un-rebutted to this minute automatically calls for

an immediate hand count of the paper ballots if not a fresh election itself. That is the binding

precedent in this circuit, a precedent that Galvin has ignored. *Griffin v. Burns*, 570 F.2d 1065 (1st

Cir. 1978).  Finally, this court may not reward a person with unclean hands. *Hazel-Atlas Glass*

*Co. v. Hartford-Empire Co*., 322 U.S. 238 (1944)

## TASSINARI IS ONE OF THE CIVILLY ACCUSED

Galvin has submitted an affidavit sworn out by Tassinari that is offered ostensibly to

rebut the Plaintiff's affidavit. Tassinari is not an independent expert in this case. She is in fact a

named defendant in Plaintiff's related case, *Ayyadurai v. Galvin*, 20-11889. It is beyond dispute

that it is in Tassinari's personal interest to bamboozle this court into accepting that ballot images

are never created by digital scanners and therefore accept that Tassinari did not violate Federal

law when she refused to maintain chain of custody and retain the ballot images. Tassinari hopes

to personally escape federal prosecution through this false claim succeeding in civil court.

Vendors of electronic voting systems have documented for years that digital scanners create an electronic ballot image from the scanned paper ballot, that this ballot image is used for electronic tabulation of the vote, and that by default their machines save the images from the internal RAM to a Flash drive because Federal law requires that electronic ballot images be saved and chain of custody maintained for 22 months after the election. Eric Comer, Executive Vice-President at Dominion Voting Systems, can be seen on this video:

https://twitter.com/va_shiva/status/1335238450275086336?s=20  stating, "The [ballot] images are not encrypted.  So, those are publicly available.  And, they are standard TIFF format.  So, most states we've implemented in actually makes the [ballot] images publicly available."

Per Tassinari's affidavit, national vendors are coerced into switching this default setting to OFF in order to be able to sell their systems to Massachusetts election officials. Litigation from 2020 in the State of Florida, familiar to all persons in the field of electronic voting, resulted in Florida agreeing to abandon its prior practice of not maintaining chain of custody over electronic ballot images. Massachusetts remains the runt of the litter when it comes to transparent compliance with the letter and spirit of Federal law and constitutional principles.

THE TASSINARI AFFIDAVIT IS EASILY DEMONSTRATED AS CONSCIOUSLY FALSE

Here are specific rebuttals of specific false assertions submitted by Tassinari to this court via affidavit:

PARAGRAPH #5

5.      At 10:47am on September 24, I responded to Ayyadurai by email, informing him

that no responsive records existed and that no ballot images existed because the certification of

voting equipment in Massachusetts prohibits the capturing of ballot images. Ayyadurai

responded seeking a citation for the prohibition on capturing ballot images. I responded again at

11:44 am on September 25, attaching copies of the certification for two different types of digital

scan equipment in Massachusetts (which, in any event, are not used by every municipality in

Massachusetts – some do not use scanning equipment to tabulate ballots).

Tassinari is incorrect in her assertion that electronic voting machines certified for use in

Massachusetts do not create electronic ballot images. All digital scanners create an electronic

image of the scanned paper ballot. This image is stored within the internal Random Access

Memory of the machine itself. Later this image may be downloaded to an external hard drive /

flash drive for storage. If the image is not downloaded after an election is completed, that data in

the machine's internal memory will be over-written by fresh data from the next election when

new paper ballots are scanned in, and thus destroyed forever. There is only so much space in a

machine's internal memory. Here are the steps from ES&S' own technical manual:

> A. First, the paper ballot is scanned, and an image is captured into random access
> memory (RAM).
> B. The scanner then uses the ballot image with the ES&S's patented Intelligent Mark
> Recognition (IMR) and Positive Target Recognition to process the ballot images.
> C. Once the voter's marks are identified and stored, the Digital Scanner then either writes
> the ballot image in RAM or to the internal USB flash drive or the hard drive of DS850 or
> both.
> D. "If the image is written to the internal USB media, the image file is also digitally
> signed for added security."
> E. "At the close of polls, all image files are encrypted and re-signed before the USB
> media is removed from each DS200."
> F. "For the DS200, no changes can be made to the image capture settings without making
> changes in the election programming software (in the EMS) and reburning all media" (to
> USB drives to all scanners.)
> G. "For the DS450/DS850, image settings can be changed through the configuration
> menu on the scanner; however, this requires a change in local County procedures and
> settings."

H. Election Reporting Manager (ERM) is used to archive the DS200/DS450/ DS850 media, and Electionware will contain and be able to display and export all cast vote records and those ballot images as designated by the user.

Thus, the vendor for the DS200 machine itself declares that electronic ballot images are created (captured from the paper ballot), they may be stored either in the internal RAM or an external Flash drive, and either saved after the election or destroyed.

In numerous jurisdictions, courts have already ruled that electronic ballot images created by digital scanners are public records that are subject to the chain of custody requirement of federal law. Here is video from a hearing in Arizona's Pima County Superior Court, Judge Gordon presiding, - https://youtu.be/g4HoUMP-fzI - in which Judge Gordon may be seen and heard declaring that once an electronic ballot image is created by the digital scanner, it must be preserved and not destroyed. *Hernandez v. Pima County*, Case no. C201603926.

This is not news, especially to persons actively in the field of elections using electronic voting systems, such as State Elections Directors. All electronic voting systems vendors thus specifically include the ability to download and permanently save the ballot images from the machine's internal RAM.

See Page 54 of the ES&S document, ES&S Voting System 5.2.0.3 System Functionality Description, section on DATA RETENTION 2.1.10: https://bit.ly/2YolmMN

"Because the purpose of this law is to assist the federal government in discharging its law enforcement responsibilities in connection with civil rights and elections crimes, its scope must be interpreted in keeping with that objective. The appropriate state or local authority **must preserve all records that may be relevant to the detection and prosecution of federal civil rights or election crimes for the 22-month federal retention period, if the records were generated in connection with an election that was held in whole or in part to select federal candidates.** It is important to note that Section 1974 does not require that election officials generate any specific type or classification of election record. However, if a record is generated, Section 1974 comes into force and the appropriate authority must retain the records for 22 months."

All state elections directors nationwide fully know this. Tassinari's conscious assertion in a sworn affidavit that the electronic voting machines in Massachusetts "do not create ballot images" is inexplicable. Plaintiff is forced to conclude Tassinari asserted this in order to excuse away the fact that she, as State Elections Director, did not maintain chain of custody over the electronic ballot images as required by 42 USC 1974 and 52 USC 20701.  This excuse is defined as "The Dog Ate My Homework."

PARAGRAPH #7

7.      For the 2020 State Primary Election held on September 1 and the 2020 Statewide General Election held on November 3, 59 municipalities hand counted their paper ballots and the remaining 292 used an electronic tabulator to count votes on their paper ballots.  73 municipalities used Accuvote voting machines, 7 municipalities used Optech voting machines, 37 municipalities used DS200 voting machines and 175 used Imagecast voting machines.  These four machines are the only machines certified and being used in Massachusetts elections.[1]

Tassinari declares that the vast majority of precincts used electronic tabulation to generate the final vote tally - 292 versus 59 - meaning 83% of the cities/towns. All ballot images generated by digital scanners used in these cities/towns were covered by the chain of custody requirement of federal law. And fully 83% of the cities/towns were vulnerable to manipulation of electronic votes by a computer algorithm. This is not trivial. Just compare with Franklin county.

PARAGRAPH #9

9.      Voting equipment used in Massachusetts does not create or store ballot images. Of the equipment listed in Paragraph 7, only the Imagecast and the DS200, which fall into the category of digital scanning machines, have the technological capacity to create digital ballot images.  However, as a condition of certification in Massachusetts, that functionality must be disabled. I have confirmed with the vendors of the Imagecast and DS200 voting equipment that the scanning functionality was disabled for the September 1st State Primary and November 3rd General Election and that no ballot images were created. Both the Imagecast and the DS200 read the completed vote indicators, which are ovals filled in by the voter next to their choices on the paper ballots. Accuvote and Optech voting machines are not digital scanners but rather are optical scanners that do not have the technological capability to create an image of a ballot; they merely scan paper ballots for marked vote indicators and tabulate those vote indicators. For Accuvote machines, the vote indicator is an oval that the voter fills in, and for Optech machines, the vote indicator is an arrow that the voter must complete.  The voting equipment used in Massachusetts meets the federal standards, as certified by an independent testing lab, that require recording each vote precisely as indicated by the voter and producing an accurate report of all votes cast, and does not "weight" votes.

Once again Tassinari is incorrect when she asserts that digital scanning machines do not create electronic ballot images. Here is a forthright document produced by the California Secretary of State - https://votingsystems.cdn.sos.ca.gov/vendors/ess/evs6042/ess-6042-proc.pdf

Tassinari's further assertion that she personally "confirmed" with the vendors of Imagecast and DS200 voting machines that their scanners did not create electronic ballot images during the September 1st Republican Primary and the November 3rd General Election is staggering and totally unbelievable. Plaintiff is stunned to see this assertion submitted under oath to a federal judge by a State Election Director, President-elect of the National Association of

State Election Directors, and Member of the Standards Board of the Elections Assistance

Commission (EAC.gov).

It is impossible to give even the slightest credence to Tassinari's statement. This court

must mandatorily require the vendors to testify under oath about the veracity of Paragraph #9 in

Tassinari's affidavit, whether or not they even communicated with Tassinari, and to prove that

their digital scanners did not create digital images for tabulation. Tassinari may not be taken at

her word.

Tassinari's further assertion that electronic voting systems used in Massachusetts do not

"weight" votes requires more substantiation given that Plaintiff's affidavit presents mathematical

proof for the use of a weighted algorithm that multiplied all votes cast for him by 0.666. A bald

sentence is not enough given that the manufacturers of the machines themselves declare that the

weighted race algorithm/feature is built-in so their machines may be used in other types of

elections, such as stockholder elections where one voter or stockholder might have a thousand

shares, and another might have 2 ½ shares. It is an undeniable fact that the weighted race feature

is automatically installed at the factory and included in all documentation.

Finally, Tassinari's assertion that Massachusetts' voting machines meet the federal

standard is objectively untrue. Machines that meet the federal standard perforce save all

electronic ballot images created for the purpose of electronic tabulation. Massachusetts forces

voting machines to NOT meet the federal standard. Machines that meet the federal standard are

prohibited by Galvin from being sold within Massachusetts.

Tassinari and Galvin have proved unable to cite the actual Massachusetts regulation or

statute that authorizes to force electronic voting machine vendors to turns these save ballot

images feature "OFF."  Regardless, it's a violation of federal law to destroy/delete/not

store/overwrite ballot images – records - generated in connection with a federal election.

PARAGRAPH #12

12.     By regulation, all voting machines are tested before each and every election.
Local election officials must mark at least 50 ballots for each precinct (in a primary, local
election officials must mark at least 50 ballots per party for each precinct), which must be hand
counted, deposited into the tabulator and then the results from the hand count compared to the
machine count. This testing process is performed in public and notice is posted at least 3 days in
advance.  If, during the testing process, there are any problems, including tabulation errors and/or
mechanical failures, the local election official is required to report those errors to the Secretary's
office.  The Elections Division did not receive any reports of tabulation errors, inaccuracies or
mechanical failures from testing done before the September 1st State Primary or the November
3rd General Election.

In paragraph 12 Tassinari describes a standard Logic and Accuracy Test. This test does

not in any way evaluate or expose algorithms programmed in the machine that electronically

tabulates ballot images and is worthless as any sort of confirmation that no algorithm was

employed to multiply all votes cast for the Plaintiff by 0.666.

It is an established fact in numerous courts, both in the United States and in Germany,

that algorithms may be employed to present one type of behavior during testing and a different

type of behavior in the field. This fact was established in the Volkswagen emissions test fraud

cases and is known to laypersons worldwide. No state official who baldly asserts in a sworn

affidavit, that such fraud cannot occur in the realm of electronic voting systems, is credible.

Tassinari's assertion is as incredible and absurd as emissions testers denying the existence of a

"cheat algorithm" simply because the Volkswagen cars they tested passed their emissions tests.



PARAGRAPH #14

14.     The Imagecast and the DS200 machines are capable of generating a "Cast Vote

Record," but only if the municipality has purchased additional software, which is not required by

the Secretary's Office or by the certification standards set forth in regulation.  The Accuvote and

Optech voting machines cannot produce such records, even with additional software.

Tassinari's assertion is incorrect. No additional software purchase is required for an

Imagecast or DS200 digital scanner machine to create an electronic ballot image and the Cast

Vote Record.

Any additional software, if it is created for use during federal elections, must be certified

before use by the Election Assistance Commission. Tassinari is a Member of the Standards

Board of the Elections Assistance Commission (EAC.gov) and is required to know that

Imagecast and DS200 machines have not needed certification for the use of additional software

because they do not need additional software to create the Cast Vote Record.

Tassinari's choice to intentionally include this false claim in a sworn affidavit can only be

due to a need to explain away why she was unable to produce the Cast Vote Record to the

Plaintiff, without having to concede that the real reason she was unable to produce a Cast Vote Record is because it would prove that an algorithm was employed.

It is unacceptable for Galvin and Tassinari to try dismissing this lawsuit itself by claiming Plaintiff did not ask for a simple recount, while knowing that they violated federal law, ran a rigged election and did not transparently produce basic data such as the Cast Vote Record.

There are numerous other points in the Tassinari affidavit that raise eyebrows, such as the low percentage of correct ballots counted in the audits. However, for the purposes of this preliminary injunction, this court has enough data to ascertain that Galvin and his co-defendant Tassinari have committed a fraud on this court through numerous egregious, hair-raising, factual misrepresentations via a sworn affidavit, a document that qualifies for skim milk masquerading as cream. Again, this court may not reward a person with unclean hands. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)

### CONCLUSION

For the above reasons, and those in the original motion for a preliminary injunction with affidavit, this court must immediately order a hand-count of the paper ballots cast in the September 1, 2020 Republican primary in Massachusetts as the only way to exclude fraud and ensure the constitutional principle of "One Person, One Vote."

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

_____

**Dr. Shiva Ayyadurai**

December 7, 2020

Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com