US DISTRICT COURT FOR MASSACHUSETTS

Case no. 1:20-CV-12080-MLW

Dr. SHIVA AYYADURAI,   )
       Petitioner,   )
                       )
       v.   )
                       )
WILLIAM F. GALVIN,   )
in his official capacity as   )
Secretary of State,   )
       Respondent.   )

PLAINTIFF'S OPPOSITION TO
GALVIN'S MOTION TO DISMISS

Plaintiff opposes Galvin's motion to dismiss this complaint as follows:

PLAINTIFF'S CLAIMS ARE 100% DIFFERENT FROM *MORAN ET AL*

John Paul Moran and his four co-plaintiffs together *pro se* filed a lawsuit, which is entirely meritless. Moran contacted this Plaintiff prior to filing his claim and aimed to commission Plaintiff to perform data analysis for him that he could use in his lawsuit. Plaintiff informed Moran that he had no claim at all and that he would be better off joining Plaintiff's meritorious lawsuit, which at least dealt with the real crime scene in the 21st Century and not stale 18th Century claims. Moran declined to join Plaintiff's lawsuit and did not invite Plaintiff to join his own forthcoming lawsuit because Plaintiff's claims were 100% different from Moran's own. Plaintiff made explicit to Moran in that phone call that mail-in ballots were a non-issue so long as chain of custody was maintained and election officials ensured that only actual citizens cast votes, that the real fraud was in the electronic tabulation of votes, that there was nothing unconstitutional about voting by mail and that Plaintiff did not agree with a single one of

1

Moran's claims. Plaintiff then asked Moran why he called the Plaintiff now given that all five co-plaintiffs were part of the official Massachusetts GOP slate, meaning machine candidates, who had all endorsed the other MassGOP-annointed proxy, Kevin O'Connor, in the September Republican primary race against the Plaintiff. Moran had no answer.

At that moment it became evident to Plaintiff that Moran and his co-plaintiffs were again serving as the MassGOP proxies, as they had always done, and were going to file an 18th Century lawsuit expressly to distract from and sabotage Plaintiff's own effort to expose the widespread use of computer algorithm fraud by Galvin, which most certainly could not have occurred without the MassGOP's knowledge and concurrence, as documented in Plaintiff's affidavit.

> "On the other side, stand those who push allegation after allegation on the thievery of mail-in ballots, and tweet and post pictures of bags of ballots in dumpsters. The latter includes those who misdirect people's attention away from the real issues of election fraud – the concern of this Affidavit – to concerns that do not address the primary issue; thus, ensuring that stories about election fraud end up in the Weird News section." Plaintiff's affidavit, page 7 (Dkt. 11)

As expected, MassGOP's official proxies, on behalf of Galvin, and with the sole intention of saving Galvin from being held responsible for mathematically-proven computer algorithm fraud, have ensured that the US District court now has a case expressly designed for the Weird News section, a case expressly designed to belittle genuine claims that mathematically demonstrate election fraud. *Moran v. Commonwealth of Massachusetts*, 20-CV-12171-ADB



> **Judge tells the five Republican losers she has to hear their case, but she doesn't have to like it**
>
> By adamg - 12/8/20 - 5:06 pm
>
> A federal judge today told five failed Republican office seekers that she's not real happy with the way they waited more than a month after the November election to legally question its validity. Read more.

The Universal Hub report further stated that "Burroughs gave the state's lawyers until Dec. 15 to stop snorting and file a reply that explains everything that's wrong with the candidates' arguments[.]" https://www.universalhub.com/2020/judge-tells-five-republican-losers-she-has-hear

This court must note that Galvin and the state's lawyers were not snorting over Plaintiff's complaint and motion for a preliminary injunction. In fact, they were compelled to file the seriously-fraudulent and consciously-perjurious Tassinari affidavit (*explained in detail in Plaintiff's reply to Galvin's opposition to the motion for a preliminary injunction*) in order to hoodwink this court and misdirect it away from ruling that electronic ballot images were indeed created; they were destroyed in violation of federal law; and, that the mathematical analysis in Plaintiff's affidavit requires a proper hand-count of paper ballots cast in the September 2020 Republican primary race, because the risk of fraud having occurred is too high and fundamental Constitutional principles are involved that define who we are as a country.

The *Moran* lawsuit is a deliberate fraud on the court that has as its sole purpose the sabotage of Plaintiff's efforts, which aims to bring accountability to Galvin's conscious violations of the law. The *Moran* case is a cruel waste of the court's time and scarce resources that must be dismissed soon. The court's resources are too precious to waste on rearguard efforts to save Galvin from ignominy, and perhaps prison.

Bang on cue, on December 9, 2020, MassGOP issued a solemn statement that aimed solely to give the impression that *Moran et al* acted solely on their own and not as proxies for the establishment: "Republican lawmakers request public analysis of Massachusetts's universal mail-in voting." This also explains the stunt involving five Republican ex-candidates filing *pro se*, as if it is not the MassGOP actually bringing a fake case to bamboozle the court and save Galvin. https://massgop.com/republican-lawmakers-request-public-analysis-of-massachusetts-mail-in-voting-experience/

Given that Galvin and the Attorney General have already filed a brief (Dkt. 14) stating their position that *Galvin I* and *Galvin II* are not related cases, Galvin is naturally precluded from now claiming that *Galvin II* and *Moran* are related cases. That would be egregiously false.

GALVIN'S MOTION TO DISMISS IS IN ERROR AS A MATTER OF LAW AND FACT

Galvin's motion to dismiss states: "The Court should dismiss this extraordinary suit for two reasons: (1) Plaintiff's request is moot because the election results have now been certified by the Governor and Council; and (2) the sole legal claim in this suit does not provide a private right of action."

Plaintiff rebuts each of these false assertions as follows:

REBUTTAL 1: PLAINTIFF'S REQUEST IS NOT MOOT

Galvin has provided this court with a copy of the certificate signed by Governor Baker, which states that Edward Markey is the state's selection to occupy a seat in the U.S. Senate. Galvin claims that this action, certification, is final, '***set in stone***' as it were, and ***automatically*** makes the complaint moot.

Galvin, the Chief Election Officer for Massachusetts for 25 years now, fully knew that was a false statement when he peddled it to this court. Galvin is aware, as are all persons conversant with polling history for the U.S. Senate, including laypersons not in political office, that certification by the Governor is easily reversed and has been done so on many occasions.

Plaintiff reminds this court of the events surrounding the 1974 race for U.S. Senate conducted in New Hampshire.  Republican Louis Wyman ran against Democrat John Durkin for the seat previously occupied by Norris Cotton, who chose to retire. Initially Wyman was certified by the Governor as the next Senator. After a recount Wyman was decertified and the Governor certified Durkin.  After a second tabulation, Durkin was decertified and the Governor certified Wyman. *Wyman v. Durkin*, 115 N.H. 1, 330 A.2d 778 (1975).  Finally, the U.S. Senate declared the seat vacant and a fresh special election was held.
https://www.senate.gov/artandhistory/history/minute/Closest_election_in_Senate_history.htm

The 1974 Senate race holds the record for the closest Senate race ever, dragged on for eight full months, and involved not one by two decertifications. It beggars belief that a professional election official of 25 years standing did not remember this famous fact prior to peddling his false claim to this court. And we are talking about events from 1974, not 1874, and in next door New Hampshire, not in far off Idaho, at the time that a young Galvin already was immersed in politics. In 1972, Galvin was an aide to the **Governor's Council** himself and fully versed in the legal ins and outs of certification. And in 1975, right around the time of the Wyman-Durkin controversy with its two certifications and two decertifications, he won his first special election as Representative to the Massachusetts State House from Allston-Brighton. It stretches credulity to claim that Galvin would have personally forgotten such a seminal event from his early days in politics.

In addition, when not just innocent errors in transparent paper ballot tabulation, as in the 1974 New Hampshire vote, but active intentional fraud has been shown via mathematical analyses in a sworn affidavit, **certification by the Governor means nothing** *per se*. The U.S. 1st Circuit Court of Appeals ruled in *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) that a fresh primary election was necessary to ensure the binding principle that the voters' choice must be respected and reflected in the choice of their representative. This *stare decisis* is from 1978, not 1878.

> "Accordingly, where there is substantial wrongdoing in an election, the effects of which are not capable of quantification but which render the apparent result an unreliable indicium of the will of the electorate, courts have frequently declined to allow the apparent winner to exercise the delegated power."
> *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994)

Thus, as a matter of fact and law, as Galvin already knew when he chose to peddle his untruth to this court, mere certification by the Governor does not make Plaintiff's complaint moot. This case remains a live controversy well within this court's jurisdiction. Dismissing this complaint at the Rule 12 stage would be error, and violate the Supreme Court's standard set in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), given that the Defendant's claim of mootness is so easily refuted, which is far from the required level of certitude.

> "On a Rule 12(b)(6) motion, the court's inquiry sometimes may encompass affirmative defenses. Everything depends on the record. As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude. Colonial Mortg. Bankers, 324 F.3d at 16."
> *Rodi v. Southern NESL*, 389 F.3d 5 (1st Cir. 2004)

Dismissal would also violate the Supreme Court's long line of rulings that federal courts have a "virtually unflagging obligation" to rule on the merits of cases properly before them.

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. ___ (2013) (***unanimous***), *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 US 350 (1989), *England v. Medical Examiners*, 375 U.S. 411 (1964)

> "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 US 178 (1962)

> "We conclude that the complaint states one potentially actionable claim and another that is not beyond hope of repair. Consequently, we reverse the order of dismissal in part and remand for further proceedings." *Rodi v. Southern NESL*, 389 F.3d 5 (1st Cir. 2004)

Dismissal on the basis of such an easily-disproved assertion would also violate the Massachusetts Supreme Court's ruling in *Comstock v. Soule*, 303 Mass. 153 (1939)

> "It would be a manifest injustice to turn the plaintiff out of court without a determination of the important question of evidence that the parties have sought to raise."

### REBUTTAL 2: PLAINTIFF DID NOT RELY ON 52 USC 20701 AS HIS CAUSE OF ACTION

Galvin's false claim that Plaintiff relies on a U.S. Code as his cause of action is conscious misdirection that has no basis in fact. While it is Galvin who is deeply worried, for the first time in 25 years that he may face a year in prison for each time he violated 52 USC 20701 (Plaintiff is reminded of John Dean counting the number of times he committed perjury at the Watergate Hearing: 1, 2, 3...), and reacted instantly to shut Plaintiff's speech down on Twitter as soon as Plaintiff raised this point publicly, Plaintiff, despite being an engineer and scientist representing himself *pro se*, fully knows that 52 USC 20701 provides him no private cause of action.

This knowledge led Plaintiff to file a criminal complaint with U.S. Attorney Andrew Lelling, because Plaintiff already knew that only a public prosecutor has the authority to indict Galvin for violation of 52 USC 20701.

There is not one single sentence within Plaintiff's amended complaint in case 11889 or in the complaint in case 12080 that declares Plaintiff's reliance on 52 USC 20701 for a private cause of action. The only time Plaintiff ever mentions 52 USC 20701 is to cite the actual federal law that requires Galvin to preserve all records. Even so, this case is not about suing Galvin over preservation of records, it is about electronic manipulation of the vote counts. Plaintiff has furnished this court with a detailed affidavit detailing the mathematical analyses, which shows how the manipulation was done. None of this has anything to do with 52 USC 20701.

Galvin is fully aware that his assertion is materially false and "could not have been calculated to assist the Court in the administration of justice, but only to win an advantage." *Tesco Corp. v. Weatherford Int'l, Inc.*, No. H-08-2531, 2014 WL 4244215 (S.D. Tex. 2014)

Thus, as a matter of law and fact, Plaintiff does not rely on 52 USC 20701 to supply him with the cause of action to bring this case. Dismissing this complaint at the Rule 12 stage would be error, and violate the Supreme Court's standard set in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), given that the Defendant's claim of reliance on 52 USC 20701 for a private cause of action is so easily refuted, which is far from the required level of certitude.

> "On a Rule 12(b)(6) motion, the court's inquiry sometimes may encompass affirmative defenses. Everything depends on the record. As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude. Colonial Mortg. Bankers, 324 F.3d at 16."
> *Rodi v. Southern NESL*, 389 F.3d 5 (1st Cir. 2004)

Dismissal would also violate the Supreme Court's long line of rulings that federal courts have a "virtually unflagging obligation" to rule on the merits of cases properly before them for adjudication of federal questions. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. ___ (2013)

(*unanimous*), *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 US 350 (1989), *England v. Medical Examiners*, 375 U.S. 411 (1964)

> "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 US 178 (1962)

> "We conclude that the complaint states one potentially actionable claim and another that is not beyond hope of repair. Consequently, we reverse the order of dismissal in part and remand for further proceedings." *Rodi v. Southern NESL*, 389 F.3d 5 (1st Cir. 2004)

Here, a candidate for federal office has discovered fraud, that affected his and his voters' rights to an elected representative who was properly chosen in an election that did not suffer from any indicia of fraud, and instead left him with a result, "the effects of which are not capable of quantification but which render the apparent result an unreliable indicium of the will of the electorate," it is absolutely his right as an American Citizen to seek relief from a Federal court.

This is applicable *a fortiori* here because the effects were **actually quantified!** The Plaintiff mathematically proved that votes for him were multiplied by a factor of 0.666, which resulted in a bizarre High-Low vote distribution pattern that has a **One-in-100,000 Chance** of occurring by itself in an election without the use of a computer algorithm to manipulate the vote count.

It is Galvin's misfortune that for once here is a candidate who is a scientist well-versed in computer algorithms and mathematical analyses. However, it is not the court's duty to violate the Plaintiff's right to be heard by a Federal court just so Galvin can escape public ignominy.

Dismissal on the basis of such an easily-disproved assertion would also violate the Massachusetts Supreme Court's ruling in *Comstock v. Soule*, 303 Mass. 153 (1939)

> "It would be a manifest injustice to turn the plaintiff out of court without a determination of the important question of evidence that the parties have sought to raise."

CONCLUSION

For the above reasons, and those in the original complaint, and in Plaintiff's mathematical affidavit, this court must deny the Defendant's motion to dismiss.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

December 9, 2020

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com