UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. SHIVA AYYADURAI,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM FRANCIS GALVIN, in his official capacity as the Secretary of the Commonwealth of Massachusetts, and CHARLES D. BAKER, in his official capacity as Governor of Massachusetts<br><br>Defendants. | CIVIL ACTION<br>NO. 1:20-cv-12080-MLW |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT**

MAURA HEALEY
ATTORNEY GENERAL

Anne Sterman (BBO No. 650426)
Adam Hornstine (BBO No. 666296)
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2048
Anne.Sterman@mass.gov
Adam.Hornstine@mass.gov

Dated: January 8, 2021

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ALLEGATIONS OF THE COMPLAINT..........................................................................2

ARGUMENT.........................................................................................................................3

I.           STANDARDS OF REVIEW. ...............................................................................3

II.        THE COURT SHOULD DISMISS THIS CLAIM FOR LACK OF JURISDICTION.......5

          A.      Plaintiff's Lacks Standing to Bring a Vote Dilution Claim Under the Equal Protection Clause of the Fourteenth Amendment....................... 5

          B.      Plaintiff's Claim is Moot Because the Election Results Have Been Certified. ................................................................................................... 7

          C.      The Eleventh Amendment Bars This Suit. ................................................. 9

II.        THE COURT SHOULD DISMISS THIS CLAIM FOR FAILURE TO STATE WITH PARTICULARITY A PLAUSIBLE EQUAL PROTECTION VIOLATION THAT IS ACTIONABLE IN FEDERAL COURT. ........................................................................11

          A.      The Amended Complaint Sounds in Fraud and Thus Rule 9(b)'s Heightened Pleading Standard Applies. ..................................................... 11

          B.      Plaintiff Fails to State a Plausible Equal Protection Claim, Let Alone with the Particularity Required by Rule 9(b). ............................... 13

CONCLUSION.................................................................................................................... 17

**INTRODUCTION**

Plaintiff Shiva Ayyadurai ran for the Republican party's nomination for the United States

Senate in 2020.  On September 1, 2020, he lost his primary election by approximately twenty

percentage points.  He did not seek a recount, although state law allowed him to do so.  Nor did

he notice an election contest, as state law also permitted.  On November 3, 2020, Plaintiff lost

the general election for the Senate seat as a write-in candidate.  Again, he neither sought a

recount nor contested the election as state law entitled him to do.  Instead, after waiting for

months, Plaintiff brings a claim based not on well-pleaded factual allegations, but on conspiracy-

filled innuendo and inflammatory personal attacks, superficially to protect the "one person, one

vote" safeguards of the Equal Protection Clause.  But that is not his Complaint's true aim.  He

denies the reality that he lost his election (twice) and so he seeks to subvert the "one person, one

vote" guarantee, changing it instead to "one person, no vote."  This is because Plaintiff's

Complaint seeks to overturn the results of two elections, disenfranchise millions of

Massachusetts voters, and strip the Commonwealth of half its representation in the Senate, so

that he can get a do-over for an election he lost fair-and-square four months ago.  This Complaint

strikes at the very core of representative democracy, sowing baseless doubts about the electoral

system and fomenting public discord.  The Court should not recognize this political ploy

disguised as a lawsuit and should dismiss it as being without factual or legal basis.

Specifically, the Court should dismiss this suit because: (1) Plaintiff lacks standing to

assert a claim for vote dilution under the Fourteenth Amendment; (2) Plaintiff's request is moot

because the election results have now been certified by the Governor and Council; (3) Plaintiff's

claim is barred by the Eleventh Amendment; and (4) Plaintiff's conclusory, fact-free claim of

1

election fraud, which is subject to Rule 9(b)'s heightened pleading requirements, fails to state a viable Equal Protection claim.  The First Circuit long ago cautioned federal courts to avoid meddling in the "machinery" of vote counting by the state by getting involved with such disputes.  See Griffin v. Burns, 570 F.2d 1065, 1077 (1st Cir. 1978).  This case proves the wisdom of that advice.  This Court should not silence the will of the voters and deprive Massachusetts of representation in the United States Senate based on nothing more than grossly untimely conspiracy theories and uninformed pseudoscience, just as Courts across the country have uniformly rejected similar baseless suits by dissatisfied candidates and voters in the wake of the 2020 election cycle.  Plaintiff's Complaint should be dismissed with prejudice.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff Shiva Ayyadurai ran unsuccessfully for the Republican party's nomination for U.S. Senate in the September 1, 2020 Massachusetts primary election.  Compl. at 20.  Following his loss during the September 1 primary election, which Plaintiff alleges was contrary to his internal polling that showed him leading in all counties in the Commonwealth, Plaintiff's campaign submitted public records requests in various cities and towns across the Commonwealth seeking the list of voters who participated in the primary in each of those cities and towns.  Compl. at 21-22.  Plaintiff alleges that in all of the seven cities/towns that provided data in response to his campaign's request, the number of tabulated votes exceeded the number of voters shown to have voted.  Compl. at 21.  Based on his alleged engineering and mathematical expertise, Plaintiff allegedly determined that his votes had been weighted thus causing his loss.  Compl. at 33.  He further alleges that the electronic tabulation equipment used by many municipalities creates ballot images, but that the Secretary's office has confirmed that it deleted those ballot images in violation of federal law.  Compl. at 22-27.  As a result, he brings this claim under Section 1983 alleging an Equal Protection Clause violation.

**ARGUMENT**

**I.      STANDARDS OF REVIEW.**

To survive a jurisdictional challenge under Rule 12(b)(1), the party asserting jurisdiction

bears the burden of demonstrating the existence of federal subject matter jurisdiction.  See

Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003).  This rule is a large umbrella,

"overspreading a variety of different types of challenges to subject-matter jurisdiction,"

including considerations of mootness and the existence of federal question jurisdiction.  Valentín

v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001).  There are two types of Rule

12(b)(1) challenges, facial and factual.  If the 12(b)(1) motion does not dispute subject matter

allegations, then it challenges only the facial sufficiency of the complaint.  Torres–Negrón v. J &

N Records, LLC, 504 F.3d 151, 162 n.8 (1st Cir. 2007).  If the 12(b)(1) motion disputes the

subject matter allegations, then it challenges the factual basis for subject matter jurisdiction.  Id.

Under a facial challenge, the moving party challenges jurisdiction based on the

allegations in the complaint.  See Valentín, 254 F.3d at 363.  A facial attack only requires a court

to examine the complaint and determine whether the plaintiff "has sufficiently alleged a basis of

subject matter jurisdiction."  Torres–Negrón, 504 F.3d at 162.  By contrast, when "a motion to

dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) involves factual

questions ... the court must determine whether the relevant facts, which would determine the

court's jurisdiction, also implicate elements of the plaintiff's cause of action."  Id. at 162–63.

"[I]f the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the

plaintiff's claim, ... 'the trial court is free to weigh the evidence and satisfy itself as to the

existence of its power to hear the case.'"  Id. at 163 (citation omitted).  However, "where the

jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional

question is dependent on factual issues going to the merits, the district court should employ the

3

standard applicable to a motion for summary judgment." Id. (internal citation, quotation, and punctuation omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The grounds of entitlement to relief set forth in the complaint must constitute "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In evaluating this motion to dismiss, the Court generally assumes the truth of "all well-plead[ed] facts," and consider documents referenced in the complaint, but conclusory allegations or "naked assertion[s]" devoid of "further factual enhancement" should be disregarded, as should legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678-86 (2009). Thus, Plaintiff must do more than demonstrate "a sheer possibility that a defendant has acted unlawfully." Id. at 678 (internal quotations omitted). Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotation marks and original alterations omitted).

This "plausibility inquiry necessitates a two-step pavane." Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). This second step requires the reviewing court to "draw on its judicial experience and common sense." Id. (citation omitted).

"If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Morales-Cruz, 676 F.3d at 224 (citation omitted).

But, as explained below, Plaintiff's Amended Complaint is not just subject to these standard pleading requirements; his Amended Complaint sounds in fraud, and thus it must also "state with particularity the circumstances constituting fraud or mistake" pursuant to Rule 9(b). Thus, the standard "is satisfied by an averment 'of the who, what, where, and when of the allegedly false or fraudulent representation.'" Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)). "The other elements of fraud, such as intent and knowledge, may be averred in general terms." Id.

## II.     THE COURT SHOULD DISMISS THIS CLAIM FOR LACK OF JURISDICTION.

### A.     Plaintiff Lacks Standing to Bring a Vote Dilution Claim Under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff's Amended Complaint purports to assert a claim under the Fourteenth Amendment's Equal Protection Clause, on the theory that the method by which the state counted ballots violated the Constitution's principle of one person, one vote.[1] But Plaintiff's arguments that his votes were diluted because they were weighted or otherwise destroyed does not vest him with standing to press this claim in federal court because the remedy he seeks would not redress his alleged injury but would needlessly disenfranchise all Massachusetts voters. His claim should, therefore, be dismissed.

---

[1]     Plaintiff has abandoned his claim that Defendants should be held civilly liable for alleged violations of federal criminal statutes, 52 U.S.C. §§ 20701-20702, because these laws do not provide him with a private right of action. See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (noting that criminal civil rights statutes "do not give rise to a civil action for damages").

Under Article III of the United States Constitution, federal courts can resolve only "cases" and "controversies."  U.S. Const. art. III § 2.  The case-or-controversy requirement is satisfied only where a plaintiff has standing to bring suit.  See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  To establish standing, a plaintiff must show that: (1) he has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) the injury is "fairly ... trace[able] to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-62 (1992) (internal quotation marks and citations omitted).  Even if Plaintiff can establish injury-in-fact and causation under his theory of vote dilution under the Equal Protection Clause, his constitutional claim cannot stand because Plaintiff cannot clear the hurdle of redressability.

Specifically, he fails to establish that the alleged injury suffered by his supporters can be redressed by a decision from this Court undoing the prior two elections.  An order decertifying the votes of approximately 3.6 million Massachusetts voters would not reverse the dilution of Plaintiff's supporters' votes; it would instead disenfranchise all Massachusetts voters.  As one Court recently held, the alleged injury of vote dilution cannot be "remedied by denying millions of others their right to vote."  King v. Whitmer, No. CV 20-13134, 2020 WL 7134198, at *9 (E.D. Mich. Dec. 7, 2020); Bowyer v. Ducey, No. CV-20-02321-PHX-DJH, 2020 WL 7238261, at *6 (D. Ariz. Dec. 9, 2020) ("even if Plaintiffs could somehow establish that their vote dilution claim was more than a generalized grievance to the point of asserting an injury, Plaintiffs have not established that the Court can redress this grievance.  To give Plaintiffs the relief they desire would disenfranchise the nearly 3.4 million Arizonans that voted in the 2020 General Election. Under Plaintiffs' theory, this would transform all of the alleged diluted votes from being

6

"diluted" to being destroyed.").[2]  The impossibility of Plaintiff's proposed remedy is underscored

by his failure to avail himself of less drastic tools under state law, including a recount or an

election contest.  See Griffin, 570 F.2d at 1077 (Section 1983 claim for decertification of an

election only can exist where facts "go well beyond the ordinary dispute over the counting and

marking of ballots; and the question of the availability of a fully adequate state corrective

process is germane").  Plaintiff thus possesses no standing to pursue his equal protection claim,

and this claim should accordingly be dismissed.

**B.      Plaintiff's Claim is Moot Because the Election Results Have Been Certified.**

Plaintiff seeks through his Complaint an injunction requiring that the United States

Senate election results be decertified.  But this request is tardy, and Plaintiff's claim is now moot

and should be dismissed as such.  On November 25, 2020, the Governor's Council certified the

results of this election, declaring that Senator Edward J. Markey had won the state's U.S. Senate

election.  Affidavit of Michelle K. Tassinari (hereinafter "Tassinari Aff."), ¶ 4.  Further, on

November 30, 2020, the Governor signed a Certificate of Election, attested to by the Secretary,

stating that Edward J. Markey was duly elected to the United States Senate.  Id.  That certificate

was transmitted to the President of the Senate on December 1, 2020, in accordance with federal

law and Senate Rules.  Id.  Senator Markey has now been sworn in, without objection, by the

Senate.  Id.  Where, as here, Plaintiff fails to identify an ongoing dispute that can be rectified by

the Court, his suit is moot and should be dismissed on this basis.  This Court's jurisdiction under

---

[2]      Nor would Plaintiff's supposed harm be redressed just by permitting a federally-ordered recount to proceed before any election results were decertified.  Leaving aside the fact that (1) Plaintiff's motion seeks to decertify election results first before any recount would be ordered and (2) Plaintiff, in any event, fails to demonstrate that he is entitled to such extraordinary relief, the alternative of counting all votes a second time beggars the point of what would potentially happen pursuant to Plaintiff's position after such a late-in-the-day recount: all votes would then be discarded.  But as Courts have held, vote dilution is not remedied by disenfranchising all voters.  Id.

7

Article III extends only to "Cases" and "Controversies." U.S. Const. Art. III, § 2, cl. 1.  A

lawsuit becomes moot—and thus no longer a case or controversy subject to federal court

jurisdiction—when "the issues presented are no longer 'live' or the parties lack a legally

cognizable interest in the outcome." Am. Civil Liberties Union of Mass. v. U.S. Conference of

Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) ("ACLU").  "Another way of putting this is

that a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing

party." Id.  To remain subject to federal court jurisdiction, "a dispute 'must be extant at all

stages of review, not merely at the time the complaint is filed." United States v. Sanchez-

Gomez, 138 S. Ct. 1532, 1537 (2018).  "This requirement ensures that the Federal Judiciary

confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the

resolutions of which have direct consequences on the parties involved." Genesis HealthCare

Corp. v. Symczyk, 569 U.S. 66, 71 (2013).

Because the certification process Plaintiff seeks to undo has already taken place, there is

no ongoing or current dispute that could be enjoined by this Court; the claim for injunctive relief

is moot and should be dismissed.  Courts in other jurisdictions have rejected similar post-

election, post-certification suits as moot for this very reason. See Bowyer, 2020 WL 7238261, at

*11 (D. Ariz. Dec. 9, 2020) (rejecting post-election, post-certification suit as moot because "the

Court cannot enjoin the transmission of the certified results because they have already been

transmitted"); King, 2020 WL 7134198, at *6 (E.D. Mich. Dec. 7, 2020) (rejecting attempt to

decertify election as moot); see also Wood v. Raffensperger, -- F.3d ---, 2020 WL 7094866, at *6

(11th Cir. Dec. 5, 2020) ("We cannot turn back the clock and create a world in which the 2020

election results are not certified….And it is not possible for us to delay certification nor

8

meaningful to order a new recount when the results are already final and certified.") (internal

quotation marks and citations omitted).  The result here should be no different.

> ### C.      The Eleventh Amendment Bars This Suit.

Plaintiff's suit should likewise be dismissed because it is barred by the Eleventh

Amendment.  The Eleventh Amendment provides that federal jurisdiction "shall not be construed

to extend to any suit in law or equity, commenced or prosecuted against one of the United States

by Citizens of another state."  U.S. Const. amend. XI.  The Supreme Court has held that "[t]he

ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by

private individuals in federal court."  Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363

(2001); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("It is

clear ... that in the absence of consent a suit in which the State or one of its agencies or

departments is named as the defendant is proscribed by the Eleventh Amendment.... [T]his

jurisdictional bar applies regardless of the nature of the relief sought.").

This Eleventh Amendment proscription is subject to a narrow exception recognized more

than a century ago in Ex parte Young, 209 U.S. 123, 159–160 (1908).  Federal courts can

prospectively enjoin state officials from continuing to violate the U.S. Constitution or other

federal law, "notwithstanding the absence of consent, waiver or evidence of congressional

assertion of national hegemony."  Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir.

2002) (citation omitted).  But "the theory of Young has not been provided an expansive

interpretation."  Pennhurst, 465 U.S. at 102.  In determining whether a suit falls within the

narrow exception carved out in Ex parte Young, it is "the substance, rather than … the form of

the relief sought" that matters.  Papasan v. Allain, 478 U.S. 265, 278-79 (1986).  The Ex parte

Young doctrine only allows federal courts to exercise jurisdiction over a suit in which the private

plaintiff alleges ongoing violations of federal law; suits that seek redress for past wrongs are still

barred by the Eleventh Amendment.  See id. at 277–78 (noting that "Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past."); Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 73 (1996) (stating that Ex parte Young permits suit against a state official to go forward where it seeks "only prospective injunctive relief in order to "end a continuing violation of federal law.") (emphasis added).  Thus, in "determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  Verizon Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002) (citation omitted).  And even where the requested relief has only future impact on the state defendant, "[t]he pivotal question is whether the relief 'serves directly to bring to an end a present violation of federal law.'"  Whalen v. Mass. Trial Court, 397 F.3d 19, 29 (1st Cir. 2005) (citation omitted).

This Court lacks jurisdiction over Plaintiff's injunctive claim because nowhere does he identify an ongoing course of conduct that would continue to deprive him of federally protected constitutional rights.  See Hootstein v. Collins, 670 F. Supp. 2d 110, 114 (D. Mass. 2009) ("The Ex parte Young doctrine, then, only allows federal courts to exercise jurisdiction over a suit in which the plaintiff alleges ongoing violations of federal law; suits that seek redress of past wrongs are still barred by the Eleventh Amendment.").  Again, federal Courts have rejected nearly identical election-related claims on this basis.  See King, 2020 WL 7134198, at *5 (concluding Eleventh Amendment barred election-related suit where the alleged harm already occurred and thus there "is no continuing violation to enjoin"); Bowyer, 2020 WL 7238261, at *9 (rejecting suit on Eleventh Amendment grounds where "[t]he relief requested—compelling

10

the Governor to decertify the election—similarly seeks to alter past conduct" and as such

"Plaintiffs have not identified an ongoing violation to enjoin.").  Once again, this case is no

different, and it should be dismissed.

**III.    THE COURT SHOULD DISMISS THIS CLAIM FOR FAILURE TO STATE
WITH PARTICULARITY A PLAUSIBLE EQUAL PROTECTION VIOLATION
THAT IS ACTIONABLE IN FEDERAL COURT.**

Even if the Court were to look beyond these fatal jurisdictional defects, it should

nonetheless dismiss this suit for failure to state a plausible, well-pleaded Equal Protection claim.

This suit does not present the kind of extraordinary circumstances that would permit a federal

court to wade into a dispute about vote counting under the guise of an alleged Equal Protection

claim.  Instead, Plaintiff's Complaint is larded with nebulous conspiracy theories, replete with

hearsay, uninformed speculation, and irrelevant anecdotes.  None of these fabulist theories,

however, makes out a plausible claim that the Commonwealth violated the Equal Protection

Clause, let alone with the factual particularity required by Rule 9(b).  This claim fails because it

is legally deficient and factually bare.  Just as other Courts have rejected similarly threadbare

election fraud suits in the wake of the 2020 election, so too should this Court.

**A.    The Amended Complaint Sounds in Fraud and Thus Rule 9(b)'s Heightened
Pleading Standard Applies.**

When alleging fraud, a Plaintiff "must state with particularity the circumstances

constituting fraud."  Fed. R. Civ. P. 9(b).  This requires the pleader to "allege with particularity

the who, what, when, where, and how of the fraud."  D'Agostino v. ev3, Inc., 845 F.3d 1, 10 (1st

Cir. 2016).  "Rule 9(b)'s requirements apply to both general claims of fraud and also to

'associated claims,' ... 'where the core allegations effectively charge fraud.'"  Mulder v. Kohl's

Dep't Stores, Inc., 865 F.3d 17, 21–22 (1st Cir. 2017) (quoting N. Am. Catholic Educ.

Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009)); see also Bezdek v.

Vibram USA Inc., No. 12-10513-DPW, 2013 WL 639145, at *3 n.3 (D. Mass. Feb. 20, 2013)

("allegations may ... 'sound in fraud' so as to trigger the requirements of 9(b) when fraud lies at

the 'core of the action.'").  The First Circuit "reads Rule 9(b) expansively to cover associated

claims where the core allegations effectively charge fraud."  Timmins Software Corp. v. EMC

Corp., No. 19-CV-12053-IT, 2020 WL 6907069, at *7 (D. Mass. Nov. 24, 2020) (citations

omitted).  For example, where a complaint makes accusations of fraudulent misrepresentations,

Rule 9(b)'s heightened pleading requirements apply.  See N. Am. Catholic Educ., 567 F.3d at 14

(noting that whenever "fraudulent misrepresentation is the lynchpin" of the cause of action, Rule

9(b) applies).  Or, where a plaintiff alleges that the Defendants have engaged in election fraud,

Rule 9(b) likewise applies.  See Bowyer, 2020 WL 7238261, at *13 (applying Rule 9(b) to

dismiss claim that "Arizona's Secretary of State and Governor conspired with various domestic

and international actors to manipulate Arizona's 2020 General Election results allowing Joseph

Biden to defeat Donald Trump in the presidential race.").

Plaintiff's claim unmistakably sounds in fraud.  His entire suit is premised on the

accusation that the Defendants and others engaged in a massive conspiracy to commit election

fraud and then made fraudulent statements to cover their tracks.  In fact, the Complaint uses the

word "fraud" and its variants eleven times to describe the alleged perpetration of fraud in the

counting of Massachusetts's ballots.  See, e.g., Compl. at 1 ("Defendant William F. Galvin

("Galvin"), the Secretary of State for Massachusetts, intentionally employed computer

algorithms to manufacture fraudulent results"); at 3 ("evidence of fraud is apparent from the

record"); at 10 ("LOCAL TABULATION SITES ALSO PROVIDE AN OPPORTUNITY FOR

ALGORITHM FRAUD AND DEBASING THE WEIGHT OF VOTES); at 37 (alleging that

public employee committed "undeniable fraud on the court" by denying Plaintiff's allegations);

at 39 ("when not just innocent errors in transparent paper ballot tabulation, … but active

intentional <u>fraud</u> has been shown via mathematical analyses in a sworn affidavit, mere

certification by the Governor means nothing per se.").  These are precisely the kinds of

allegations that sound in fraud and to which Rule 9(b)'s pleading requirements apply.  <u>See</u>

<u>Bowyer</u>, 2020 WL 7238261, at *13 (applying Rule 9(b) to dismiss complaint alleging election

fraud concerning tabulation of ballots).

   **B.**  **Plaintiff Fails to State a Plausible Equal Protection Claim, Let Alone with the**
       **Particularity Required by Rule 9(b).**

   Plaintiff's Equal Protection claim should be dismissed because it fails to articulate a well-

pleaded, plausible, and particularized violation of the law.  Stripped of its incendiary rhetoric,

unfounded bombast, and mathematical-sounding speculation, the Complaint offers nothing to

substantiate a claim of election fraud, that the Defendants decided to discount his voters' support

while augmenting his opponent's voters' value.  The Complaint should, therefore, be dismissed.

   The Fourteenth Amendment's Equal Protection Clause guarantees that the government

will not treat individuals who are "similarly situated" differently.  <u>In re Subpoena to Witzel</u>, 531

F.3d 113, 118 (1st Cir. 2008).  The Supreme Court has explained that when it comes to voting

rights, "[h]aving once granted the right to vote on equal terms, the State may not, by later

arbitrary and disparate treatment, value one person's vote over that of another."  <u>Bush v. Gore</u>,

531 U.S. 98, 104-05 (2000).  The Equal Protection Clause, therefore, ensures that "equal weight"

is "accorded to each vote."  <u>Id.</u> at 104.  But the Equal Protection Clause's "one person, one vote"

guarantee "does not entail a right to have one's candidates prevail."  <u>City of Mobile v. Bolden</u>,

446 U.S. 55, 77 (1980); <u>see also</u> <u>Whitcomb v. Chavis</u>, 403 U.S. 124, 149-53 (1971) (in absence

of invidious discrimination or denial of opportunity to participate in political process, claim that

votes were "cancelled" may be a "euphemism for political defeat at the polls").

Typically, "one person, one vote" Equal Protection issues arise when a state establishes geographical units for electing political representatives but does so in a way that cancels out one group's voting strength, see Burns v. Richardson, 384 U.S. 73, 88, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966) (recognizing that electoral systems cannot be used to "cancel out the voting strength of racial or political elements of the population"), or when the state creates "rules of general application which improperly restrict or constrict the franchise," see Griffin, 570 F.2d at 1076. And recognizing this, the Supreme Court has "factored a showing of invidiousness into the prima facie case for violations of the Equal Protection Clause." Lyman v. Baker, 954 F.3d 351, 370 (1st Cir. 2020).

But that is not what Plaintiff alleges here. He does not allege that Massachusetts has established voting districts that diluted voters' votes or that some law has ex ante burdened the exercise of the franchise for certain groups. Nor does he allege any racial (or other class-based) invidiousness. Instead, he proceeds on the curious and novel theory that Massachusetts counts certain votes more than others and that these Defendants (and others) committed election fraud by discounting his supporters' votes through mathematical manipulation. He offers, however, no well-pleaded, particularized facts in support of this fanciful theory, just diffuse conspiracies that involved not only the elected public officials who are the Defendants in this case, but also Facebook, Mark Zuckerberg, various acronym-heavy NGOs, and other private entities. There are no well-pleaded allegations that Massachusetts actually discounted or enhanced the value of certain votes, just speculative, uninformed models dressed up with a veneer of mathematical certainty, paired with wild conspiracies about shadowy actors manipulating elections behind the scenes. These are precisely the type of conclusory allegations that should be accorded no weight and rejected, even at the pleading stage. See Bowyer, 2020 WL 7238261, at *13 (rejecting

14

similar allegations of election fraud conspiracy, because plaintiff's "fail in their particularity and

plausibility.  Plaintiffs append over three hundred pages of attachments, which are only

impressive for their volume. The various affidavits and expert reports are largely based on

anonymous witnesses, hearsay, and irrelevant analysis of unrelated elections."); see also King,

2020 WL 7134198, at *13 ("With nothing but speculation and conjecture that votes for President

Trump were destroyed, discarded or switched to votes for Vice President Biden, Plaintiffs' equal

protection claim fails.").

Indeed, Plaintiff's fantastic theories run headlong into the First Circuit's own recent

description of how voting in Massachusetts works.  As the Court explained in the context of the

Massachusetts presidential election and its method of assigning presidential electors, "[a]fter the

polls close, Massachusetts counts the votes, according each vote equal weight." Lyman, 954

F.3d at 371.  That a party does not win an election does not necessarily "signify that the votes for

that candidate have been rendered meaningless," the Court observed; "[i]t merely indicates that

the tally of votes for that candidate was surpassed by the tally for the winning candidate." Id.

That is precisely the case here.  Plaintiff lost because he received fewer votes than his opponent.

His rationalizations and speculations to the contrary do not amount to a well-pleaded,

particularized account of electoral fraud in violation of the Equal Protection Clause.

But even if Plaintiff had offered any well-pleaded, particularized facts in support of this

theory – and he does not – the Court should not intervene after this election to engage in a

second round of vote counting.  Federal courts have frequently recognized that state elections

should generally be left to the states.  "Election law, as it pertains to state and local elections, is

for the most part a preserve that lies within the exclusive competence of the state courts." Bonas

v. Town of North Smithfield, 265 F.3d 69, 74 (1st Cir. 2001).  Although the right to vote in a

state election is in the final analysis bottomed on federal law, <u>Reynolds v. Sims</u>, 377 U.S. 533

(1964), that right is "properly limited by respect for the political and federal framework

established by the Constitution.  This framework [in the first instance] leaves the conduct of state

elections to the states."  <u>Gamza v. Aguirre</u>, 619 F.2d 449, 453 (5th Cir. 1980) (citing <u>Oregon v.

Mitchell</u>, 400 U.S. 112, 124–29 (1970)).  As the First Circuit has recognized, federal courts

should avoid meddling in disputes over vote counting absent truly earthshaking circumstances

not present here.[3]  <u>See</u> <u>Griffin</u>, 570 F.2d at 1076-77.  Federal courts are "not equipped nor

empowered to supervise the administration of a local election," and because of this, "local

election irregularities, including even claims of official misconduct, do not usually rise to the

level of constitutional violations where adequate state corrective procedures," like the recount

and ballot contest mechanisms Plaintiff failed to use here, "exist."  <u>Id.</u> at 1077.  Simply put, this

case presents a garden-variety dispute about how votes were counted.  Plaintiff failed to use the

tools available to him under state law to seek redress.  He cannot now come to federal court to

obtain the relief he could have otherwise sought.  This Complaint does not, in the end, state a

claim for an Equal Protection violation, let alone set forth any well-pleaded and particularized

allegations of the extraordinary kind that would permit a federal court to intervene at this late

hour to disenfranchise Massachusetts's voters.  The Court should not indulge Plaintiff's efforts to

subvert the will of the voters.  "The People have spoken."  <u>King</u>, 2020 WL 7134198, at *13.

---

[3]      By way of example, the First Circuit explained that "Federal court intervention into the
state's conduct of elections for reasons other than racial discrimination has tended, for the most
part, to be limited to striking down state laws or rules of general application which improperly
restrict or constrict the franchise."  <u>Id.</u> at 1076.  Otherwise, courts should only intervene if "the
election process itself reaches the point of patent and fundamental unfairness," but such "a
situation must go well beyond the ordinary dispute over the counting and marking of ballots; and
the question of the availability of a fully adequate state corrective process is germane."  <u>Id.</u> at
1077.  No well-founded allegations remotely approaching this threshold are made in this case.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss

Plaintiff's Amended Complaint.

Respectfully submitted,

Defendants,

WILLIAM FRANCIS GALVIN, in his official
capacity, and CHARLES D. BAKER, in his official
capacity

By his attorneys,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Adam Hornstine
Anne Sterman (BBO# 650426)
Adam Hornstine (BBO# 666296)
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2048
Anne.Sterman@mass.gov
Adam.Hornstine@mass.gov

Date: January 8, 2021

17

## CERTIFICATE OF SERVICE

I, Adam Hornstine, Assistant Attorney General, hereby certify that I have this day, January 8, 2021, served the foregoing **Memorandum**, upon all parties, by electronically filing to all ECF registered parties, and paper copies will be sent to those indicated as non-registered ECF participants.

/s/ Adam Hornstine
Adam Hornstine