US DISTRICT COURT FOR MASSACHUSETTS

| | |
|---|---|
| Dr. SHIVA AYYADURAI,  )<br>        Plaintiff,  )<br>                    )<br>      v.  )<br>                    )<br>WILLIAM F. GALVIN,  )<br>in his official capacity as  )<br>Secretary of State,  )<br>CHARLES D. BAKER  )<br>in his official capacity as  )<br>Governor of Massachusetts,  )<br>        Defendants.  ) | Case No. 1:20-CV-12080-MLW |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION
TO THE MOTION FOR A PRELIMINARY INJUNCTION**

**1    Defendants repeat their mere *ipse dixit* with the hope that repetition will make it true**

Defendants reassert:

> "Massachusetts conducts safe, fair, transparent, and free elections. All voters who cast valid ballots have their votes publicly counted, and every vote counts equally. After all votes are counted, winners are declared. The machines that are used to count these votes are all publicly tested before the election, and election results are audited afterward. As an added check, state law affords any candidate the ability to seek a recount or to notice a ballot contest within a defined timeframe." Def. Opp. pg. 1 Dkt# 30

The Plaintiff's amended complaint and included affidavits present evidence that each of the above statements is counter to the truth.

      i.    Votes are NOT *publicly counted*

The counting is done via electronic vote tabulators and is not public by any definition. The public doesn't know how many ballot images were set aside for human adjudication in each precinct, how many adjudications were performed on those ballot images set aside by the machines, where the electronic vote tabulation was performed, which computer

1

programs were applied, and why the Plaintiff's mathematical analysis strongly indicates the use of a computer algorithm to flip votes from one candidate to another.

        ii.        <u>The machines are not tested for the presence of computer algorithms</u>

This is an undeniable fact. The Plaintiff has already mathematically demonstrated the impact of a computer algorithm that manipulated the vote count. This demonstration is on par with the demonstration of the "defeat device" in German automobiles with allegedly "Clean Diesel" engines. This demonstration, by Assistant Professor Arvind Thiruvengadam, another scientist of Indian origin, incidentally, was eventually admitted as correct by perpetrator Volkswagen AG, whose CEO and many engineers are facing criminal prosecution for conscious fraud. "A diesel whodunit: How software let VW cheat on emissions - A software development audit trail will likely point to who authorized the emissions-cheating algorithm" https://www.computerworld.com/article/2985283/a-diesel-whodunit-how-software-let-vw-cheat-on-emissions.html The Plaintiff has already referred to this scandal in the amended complaint. The Defendants are wholly aware that algorithms can indeed lurk within software in machines and will not be revealed unless specifically tested for. That is the standard.



In striking contrast to the Defendants, US Senator Elizabeth Warren is on record warning about the presence and use of computer algorithms to manipulate vote counts.

https://www.warren.senate.gov/imo/media/doc/H.I.G.%20McCarthy,%20&%20Staple%20Street%20letters.pdf  It is damning that the Defendants have been unable to demonstrate that they publicly tested machines used for vote tabulation in Massachusetts for the presence of such algorithms. Nothing else qualifies as the truth of the matter. Instead, Defendants peddled a perjurious affidavit from state employee Tassinari which claimed that she had been reassured by the vendors that machines used in Massachusetts elections do not even create ballot images, a claim that is contradicted by the manuals for the machines themselves as well as by the sworn affidavit from an election official involved in procuring such machines in a different state. And now, Defendants return to court with bald reassertions of statements that have already been shown, within the four corners of the amended complaint, to be counter to the evidence.

In the contest between hard mathematical evidence and false *ipse dixit*, hard evidence must prevail in a court of law, just as it did in the Volkswagen case.

   iii. <u>There is no meaningful recount available electronically</u>

And finally, the record has already established that the recount that the Defendants offer, within 72 hours, is simply running the same electronic vote tabulator, which executes the same computer algorithms, and inevitably returning the same manipulated result. The Defendants however again repeat their false statement and hope that this time it carries the day.

**2  The Defendants' fake outrage only reveals their fear of being caught**

> "Plaintiff Shiva Ayyadurai comes to this Court peddling dangerously anti-democratic and evidence-free conspiracy theories to deny the reality that he lost two elections fair-and-square –his party's nomination for United States Senate and the general election as a write-in candidate. His ask of this Court is breathtaking: to disenfranchise the 3.6 million Massachusetts voters who participated in two elections amidst a global pandemic, to temporarily strip Massachusetts of half its representation in the United States Senate, to re-count all votes from two elections conducted months ago, and to have two new elections held." <u>Def. Opp. pg. 3</u>

      i.      <u>Plaintiff seeks a paper ballot hand count as authorized by Congress</u>

Congress passed a law during the civil rights era, 52 U.S.C. §§ 20701-20702, that authorizes and facilitates hand counts of paper ballots cast in elections for federal office that were held up to twenty-two (22) months earlier. It is undeniably Congressional intent that hand counts of those paper ballots be facilitated for twenty-two months after the election is held, the result certified and someone takes the seat.

Defendants have now called Congress and via them the People of the United States, itself "dangerously anti-democratic" for authorizing a hand count almost two years after the Governor has certified an election.

There can be no assurance of the legitimacy of the vote held in September 2020 without a hand count of the paper ballot in an open and transparent manner. Congress wisely passed a law, 52 U.S.C. §§ 20701-20702, to authorize and facilitate such hand counts in order to ensure the supremacy of the US Constitution over the malign wishes of hyperventilating state officials. Without Congress passing that law, we would not be able to *ensure*, up to 22 months later, that the votes were correctly counted.

Whether the final result of the 2020 general election for the US Senate seat may change or not, Congress has authorized a hand count of the paper ballots cast in the 2020 primary race and this court has full authority to make that happen.

Defendants also claim that Congress aimed to disenfranchise this state's 3.6 million voters by passing a law that authorizes a hand count of the paper ballots cast in elections for federal office that were held up to twenty-two (22) months earlier, even though the result has already been certified by the Governor. Their claim not only defies logic, it betrays their innate contempt for the writ of Congress and the supremacy of the US Constitution.

Congress, by passing this law, has demonstrated that *ensuring* that votes have indeed been correctly counted, overrides all other concerns, including petty inconveniences, embarrassments and active efforts to conceal the use of a covert computer algorithm to debase votes, and deny "One Person, One Vote."

Defendants' claim that a hand count of the primary race would "temporarily strip Massachusetts of half its representation in the United States Senate" is the sort of absurd the-sky-is-falling tactic that is so over the top it begs the question: Why are they this desperate? After all it is common knowledge that the incumbent can stay on until any final decisions from this court and the state will not be left to hop along on one foot.

**3      Plaintiff has standing to bring an Equal Protection claim**

Plaintiff meets every one of the *Lujan* factors to merit relief from this court. He has suffered an actual injury, as both a voter and a candidate, caused directly by the Defendants, and this court can redress said injury by ordering a hand count of the paper ballots cast in the 2020 Republican primary race, an act expressly authorized by Congress. Despite the Defendants' desperate the-sky-will-fall attempt to prevent a simple court-ordered hand count of the paper ballots, such an action would not disenfranchise a single voter in Massachusetts. Transparency is a public good. Keeping facts concealed is not in the public interest.

The Defendants do not have a single legitimate argument against a court-ordered hand count of the paper ballots. After all, Congress passed a law ordering the preservation of paper ballots, 52 U.S.C. §§ 20701-20702, for the very reason that a hand count of the paper ballots is in the public interest of the United States and overrides any court's past concern about interfering in state issues. This federal court must decline the Defendants' invitation to defy explicit Congressional intent.

The Plaintiff explicitly invited the Defendants to provide a mathematical rebuttal to the data presented via a sworn complaint and sworn affidavits submitted by identified knowledgeable experts who are ready to testify under oath in open court. The court must note adversely that the Defendants have been unable to do so, despite Massachusetts being rich in mathematical university departments, which has led them to sniff derisively and hand out empty labels instead.

At no point does the plaintiff's amended complaint claim that "One Person, One Vote" entails the right to have one's preferred candidates prevail. This is a hideous and callous argument coming from Defendants who multiplied all votes cast for this plaintiff by a factor of 0.666 and produced a result that has a 1-in-100,000 chance of being real.

This 1-in-100,000 chance is a statistical finding that Defendants should easily be able to rebut, if it is not accurate. Where is the Defendants' rebuttal to this mathematical finding? Was this mathematical result not particular enough for them to spend their precious time on? The best response to bombast and diffuse conspiracies is scientific data. The Defendants have none.

It is notable that instead of explaining why they have no mathematical rebuttal, the Defendants merely segue to the claim that even if the mathematical analysis proves that "the votes were weighted or otherwise destroyed" this court should declare that it doesn't matter because the paper ballots must not be hand counted anyway because the Governor has already certified the result, thereby leaving the Plaintiff with no possibility of relief.

The Plaintiff seeks relief that is already authorized by Congress: a hand count of the paper ballots protected and preserved by 52 U.S.C. §§ 20701. This is relief that Plaintiff may easily avail of because this federal court must obey the will of Congress.

> "We begin, of course, with the presumption that the challenged statute is valid. Its wisdom is not the concern of the courts; if a challenged action does not violate the Constitution, it must be sustained." *INS v. Chadha*, 462 U.S. 919, 944 (1983)

> "The role assigned to judges in our system was to interpret the Constitution and lesser laws, not to make them. It was to protect the integrity of the Constitution, not to add to it or subtract from it—certainly not to rewrite it. For as the framers knew, unless judges are bound by the text of the Constitution, we will, in fact, no longer have a government of laws, but of men and women who are judges. And if that happens, the words of the documents that we think govern us will be just masks for the personal and capricious rule of a small elite.
> – President Ronald Reagan, Remarks at the Swearing-In Ceremony for Anthony M. Kennedy as an Associate Justice of the Supreme Court (Feb. 18, 1988)

Respect for the "state's framework" does not override the supremacy of the US Congress, which passed a law, 52 U.S.C. §§ 20701-20702, to ensure that one must be able to *ensure* that the votes are indeed accorded equal weight rather than simply accept some state official's *ipse dixit*. The Supreme Court has declared that mere *ipse dixit* is insufficient, *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), and *ipse dixit* is all that the Defendants can provide. Following the explicit will of Congress, enshrined in law, is not "subverting the will of voters."

Citing cases decided before vote tabulation became electronic and centralized fails to get at the core of the complaint here - the mathematically-proven use of computer algorithms - and are inapposite as guideposts. There is not one single other lawsuit in the entire United States that focuses squarely on the mathematics of electronic vote tabulation - the real crime scene in 21st century elections. The only solution now is a hand count of the preserved paper ballots, exactly as Congress intended.

The Defendants' argument that Plaintiff has not stated a claim for violation of equal protection fails miserably; as does their argument that no relief is available to the Plaintiff.

**4      Plaintiff's case is a live controversy and is not moot**

The United States Congress passed a law, 52 U.S.C. §§ 20701-20702, which requires paper ballots to be preserved for twenty-two (22) months after each election for federal office.

If this court were to adopt the Defendants' desperately-false claim that once an election is certified by a Governor there is no live controversy anymore, this court would be in defiance of clear Congressional policy which holds that mere certification does not make concerns about an election moot.  If certification made every such query moot, Congress would not require a twenty-two month period of retention. Congress has made explicit that concerns about the proper counting of paper ballots override these Defendants' fervent wish to conceal fraud. This case is as live a controversy as it could be and will stay a live controversy until twenty-two months from September 1, 2020.

This court must note adversely that the defendants do not address the two decertifications and recertifications that the New Hampshire Governor carried out in 1974-5.

As soon as this court orders a hand count of the paper ballots, the Plaintiff fully expects the defendants to next claim the ballots were destroyed "inadvertently" and thus unfortunately unavailable. This has happened before, in Florida, in a US House of Representatives primary race. https://www.sun-sentinel.com/local/broward/fl-sb-broward-elections-supervisor-broke-law-snipes-canova-20180514-story.html

**5      The 11th Amendment does not bar this suit**

The muddled argument put forth by the defendants suggests that the plaintiff is a Citizen of a different state and not Massachusetts.

> "The Eleventh Amendment provides that federal jurisdiction "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state."" Def. Opp. pg. 10

This Plaintiff has been a Citizen of Massachusetts nonstop from the year 1981 and ran for federal office from Massachusetts itself.

In any event, the violation of the US Constitution and federal laws by the Defendants is ongoing and is a continuing violation. Every single day that any person occupies the seat of Senator as a result of the Defendants' use of computer algorithms to flip votes cast for this Plaintiff, the Constitution is being violated. Every single day that the people are represented by a person who was not lawfully elected but was placed there, as a direct result of a computer algorithm, there is an ongoing violation of federal law. The only remedy is to hand count the paper ballots cast and transparently establish the true choice of the people. Congress passed a law, 52 U.S.C. §§ 20701-20702, specifically for this reason.

It would be wrong for this court to simply accept the Defendants' contention that Congress did not know what it was doing when it chose a twenty-two month retention period. This court has been authorized by Congress to ensure that only properly-elected persons occupy federal seats and granted this court twenty-two months to accomplish this important task.

**6       A Congressional statute bars the claim of laches**

The United States Congress passed a law, 52 U.S.C. §§ 20701-20702, which requires paper ballots to be preserved for twenty-two (22) months after each election for federal office in order for those ballots to be available throughout that entire period to facilitate any effort to ensure that votes were properly counted.  The right to have votes properly counted is a Constitutional requirement.  Laches may not be used to bar any effort to vindicate a Constitutional right, especially when the violation of that right was actively concealed by these Defendants, and especially a right further supported by a federal statute.

9

"There must, of course, have been knowledge on the part of the plaintiff of the existence of the rights, for there can be no laches in failing to assert rights of which a party is wholly ignorant, and whose existence he had no reason to apprehend."

*Halstead v. Grinnan*, 152 U.S. 412,417 (1894)

"A prospective injunction is entered only on the basis of current, ongoing conduct that threatens future harm. Inherently, such conduct cannot be so remote in time as to justify the application of the doctrine of laches."
*Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001)

In addition, he who seeks equity must do equity. The Defendants come to court without having done one iota to demonstrate how the Plaintiff's mathematical analysis could have been completed within the 72 hour deadline to seek an electronic recount or how an electronic recount would have *ensured* that votes were properly counted without any interference from the computer algorithms that the Plaintiff has demonstrated from the Defendants' own data.

The Plaintiff has proved that he exercised more than the expected due diligence and worked hard for three full months to independently obtain and analyze the data from the primary race, with not iota of cooperation or assistance from the Defendants.

That analysis led to this:

"Plaintiff provides this court a sworn affidavit detailing mathematical analysis that proves Galvin's declared numbers for the September 2020 Republican primary race may be achieved only if votes for the Plaintiff were multiplied by 0.666 and votes for his opponent were multiplied by 1.22. There is a **One-in-100,000 chance** of Galvin's declared numbers being the result without the use of a computer algorithm to alter the voters' choice." "Once De-Weighting is performed to reverse the debasement by Galvin of votes cast for the Plaintiff, in Suffolk County, Plaintiff would have received 52.5% and O'Connor 43.0%."



And yet, the Defendants now assert that "Any alleged irregularities have long since been known." Def. Opp. pg. 15 This assertion is so repellent this court must ask: Really?!

### 7      Plaintiff's claim is supported by mathematical proof

Defendants assert that "Massachusetts did not destroy ballots or otherwise engage in mathematical manipulation of vote results, as Plaintiff hypothesizes without any proof." and that "No ballot images are generated, and no weighted calculation function is used. Tassinari Aff., ¶¶ 6, 8, 9." Def. Opp. pg. 16

The amended complaint is one long technical document that presents mathematical proof that Tassinari consciously committed perjury in her Affidavit and that there indeed was mathematical manipulation of vote results. The Defendants have proved unable to present any mathematical proof that ensures the vote count was not debased.

At this stage the evidence strongly indicates that the Plaintiff will more than likely prevail on his claim before a jury.

11

**8       A Constitutional Equal Protection violation is an irreparable harm**

The Plaintiff's vote was debased and he was reduced to 2/3rds of a Citizen. Those citizens of Massachusetts who voted from the Plaintiff were also reduced to 2/3rds of a Citizen. The Defendants caused this harm and have no problems with it. However, objectively, the Plaintiff has been irreparably harmed and with each day that passes with the Commonwealth of Massachusetts actively supporting his reduction to 2/3rds of a Citizen, it is an ongoing violation. The Plaintiff is entitled to the simple relief of a hand count of the paper ballots as authorized by Congress via 52 U.S.C. §§ 20701.

## CONCLUSION

As detailed above, the injunction is wholly in the public interest, the equities wholly favor the Plaintiff and Congress has expressly authorized the relief sought. The injunction must be granted and the court must order a federally-supervised hand count of the paper ballots cast in the 2020 Republican primary race.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

January 22, 2020

**Dr. Shiva Ayyadurai**
Plaintiff, *pro se*
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com

CERTIFICATE OF SERVICE

Plaintiff certifies that he served this opposition upon Defendants via counsel via ECF.

Respectfully submitted under the pains and penalties of perjury,

/s/ Dr. Shiva Ayyadurai

January 22, 2020

**Dr. Shiva Ayyadurai**
701 Concord Ave,
Cambridge, MA 02138
Phone: 617-631-6874
Email: vashiva@vashiva.com